**Weldon McFARLAND and Richard W. McFarland, Jr., Appellants,**

v.

**Billy SANDERS d/b/a Sanders Construction Company, Appellee.**

No. 12–93–00280–CV.

Court of Appeals of Texas, Tyler.

June 27, 1996.

Weldon McFarland, Tyler, for appellants.

Gregory P. Grajczyk, Longview, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Weldon McFarland and Richard W. McFarland, Jr. (collectively, the "McFarlands," or respectively, "Weldon" and "Richard"), Appellants, appeal the judgment of the trial court in favor of Billy Sanders d/b/a Sanders Construction Company ("Sanders"), Appellee. The court rendered judgment based on the jury verdict. We will reverse and render in part and affirm in part.

This litigation is about the performance of an oral contract for certain improvements to Oakcrest Farm. Oakcrest Farm is operated by Weldon McFarland, his wife, and his sons, Richard W. McFarland, Jr. and John B. McFarland. Richard W. McFarland, Jr. is the record owner of the real property. In early 1990, Billy Sanders, a contractor, and Weldon McFarland agreed that Sanders would repair the road and bridge on the farm and perform other miscellaneous repairs. In exchange, Weldon was to pay periodic draws to Sanders and also pay for materials. Sanders began work on the bridge, building forms and pouring cement. Weldon paid for the cement. Before Sanders could complete the bridge, Weldon requested that Sanders repair the road in time for an upcoming party at the farm. Sanders stopped work on the bridge and performed dirt work on the road, rebuilt the road base, and applied asphalt to

the surface. Sanders also completed various other projects at the farm.

Weldon paid draws of $2,000.00 and $4,000.00 to Sanders. However, Weldon refused to pay the asphalt invoice of $6,055.00 and refused to pay Sanders for labor in excess of $23,000.00. Sanders repeatedly requested payment and Weldon repeatedly refused to pay. Upon Weldon's repeated refusal to pay, Sanders removed his equipment and workers from the site. Sanders filed this lawsuit against Weldon for breach of an express oral contract and against Richard on a theory of implied contract.

At trial, the jury found that there had been an agreement between Weldon and Sanders, that Weldon failed to comply with the agreement, and that damages of $27,988.50 resulted from Weldon's breach. The jury also determined that Sanders had performed compensable work for Richard in the amount of $27,988.50. Additionally, the jury found that Sanders had incurred reasonable and necessary attorney's fees. The trial court rendered judgment that Weldon and Richard were jointly and severally liable for $27,988.50 in damages, plus pre-judgment and post-judgment interest, attorney's fees and costs.

In thirteen multifarious points of error, the McFarlands complain that the trial court erred in refusing to grant their motion for instructed verdict, in refusing to submit certain questions and instructions to the jury, and in submitting various questions and instructions to the jury. Because of the multifarious and lengthy nature of their points of error, we will address McFarlands' points of error by general topic rather than point of error.

### Richard's Motion for Instructed Verdict

McFarlands' first point of error alleges that the trial court erred in overruling their motion for instructed verdict (the "motion"). In their motion, McFarlands requested the court to direct a take nothing verdict because Plaintiff had judicially admitted he had no contract with Richard and that there was no evidence of anyone acting as Richard's agent. The trial court overruled McFarlands' motion.

An appellate court reviews the denial of an instructed verdict by a legal sufficiency or "no evidence" standard of review. *City of Alamo v. Montes,* 904 S.W.2d 727, 732 (Tex. App.—Corpus Christi 1995, no writ). The reviewing court looks only at that evidence which tends to support the judgment, viewing it in the light most favorable to the judgment and giving effect to all reasonable inferences. *State v. Biggar,* 873 S.W.2d 11, 13 (Tex.1994).

*Quantum meruit* damages arise independent of an express contract. In this context, *quantum meruit* is based upon an agreement implied by law to pay for beneficial services rendered and knowingly accepted. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 944 (Tex.1990). A plaintiff may recover in *quantum meruit* when nonpayment for services rendered would "result in an unjust enrichment to the party benefitted by the work." *City of Ingleside v. Stewart,* 554 S.W.2d 939, 943 (Tex.Civ. App.—Corpus Christi 1977, writ ref'd n.r.e.). To recover *quantum meruit* damages, a claimant must prove that: 1) he rendered valuable services or furnished materials; 2) for the person sought to be charged; 3) such services and materials were accepted, used and enjoyed by the person sought to be charged; and 4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Vortt Exploration Co.,* 787 S.W.2d at 944. "To recover in *quantum meruit,* the plaintiff must show that his efforts were undertaken for the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant." *Economy Forms Corp. v. Williams Brothers Construction Co.,* 754 S.W.2d 451, 458 (Tex.App.—Houston [14th Dist.] 1988, no writ).

After reviewing only the evidence and inferences which support the verdict, and disregarding all evidence and inferences to the contrary, we hold that there was no evidence to support Richard's liability to Sanders for the improvements. To recover under a theory of implied contract, Sanders

must have shown that he undertook the improvements at Oakcrest Farms for Richard. It is not enough that Sanders demonstrated that Richard benefitted from Sanders' efforts. The evidence is clear that Sanders only contracted with Weldon, that Sanders expected Weldon to pay for the services and materials provided, and that Sanders had no contact with Richard. There is no evidence to indicate that Sanders provided services for Richard's benefit. We therefore sustain that portion of point of error one that complains of the trial court's failure to direct a verdict as to Richard. We also sustain McFarlands' eleventh and twelfth points of error to the extent such points constitute a "no evidence" complaint. We will reverse and render judgment that Sanders take nothing from Richard.

We now consider only such portion of McFarlands' remaining points that address the judgment against Weldon.

### Weldon's Motion for Instructed Verdict and "No Evidence" Points

In points of error five, six, nine, and thirteen, Weldon complains that the trial court erred in submitting certain jury questions because there was no evidence to support their submission. Specifically, Weldon argues that there was no evidence with respect to the following matters: 1) an agreement between Weldon and Sanders, 2) Sanders' completion of the project, and 3) the award of attorney's fees to Sanders. The motion for instructed verdict also alleged that Sanders did not prove any fraud or misrepresentation on Weldon's part and, therefore, the trial court should have directed a verdict in favor of Weldon on that issue. We disagree.

In reviewing a point complaining that there was no evidence to support the submission of a question to the jury, an appellate court must look at only the evidence which tends to support the judgment in order to determine if the trial court abused its discretion in submitting the issue. The standard for review of a jury charge is abuse of discretion, and abuse of discretion occurs only when the trial court acts without reference to any guiding principle. *Texas Department of Human Services v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). "The trial court's discretion is subject only to the requirement that the questions submitted must control the disposition of the case, be raised by the pleadings and the evidence, and properly submit the disputed issues for the jury's determination." *Texas Employers Insurance Ass'n v. Alcantara*, 764 S.W.2d 865, 867 (Tex.App.—Texarkana 1989, no writ). In determining whether a trial court has abused its discretion, an appellate court may not substitute its judgment for that of the trial court, but must determine whether the trial court's action was arbitrary or unreasonable. *Barham v. Turner Construction Co.*, 803 S.W.2d 731 (Tex.App.—Dallas 1990, writ denied); *K–Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 636 (Tex.App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.). Further, "[e]rror in a jury charge supports reversal only if it comprises such a denial of the rights of the complaining party as was reasonably calculated to and probably did cause the rendition of an improper judgment." *Barham*, 803 S.W.2d at 735.

Where a contractor perfectly performs an improvement contract for which the owner promised to pay a certain sum of money, upon the owner's failure to pay, the contractor may recover the contract price in an action for breach of contract. *Swansey v. Lightfoot*, 450 S.W.2d 755, 757–58 (Tex.Civ. App.—Corpus Christi 1969, no writ). For substantial performance of an improvement contract, the contractor is entitled to recover the contract price less the cost of correcting the defects in performance. *Hunter v. Andrews*, 570 S.W.2d 590, 592 (Tex.Civ.App.—Waco 1978, no writ). In some instances, however, a contractor's performance will not meet the substantial performance standard. When a contractor's work has been partially performed, a contractor may seek either lost profits or *quantum meruit* damages. *McCracken Construction Co. v. Urrutia*, 518 S.W.2d 618, 621–22 (Tex.Civ.App.—El Paso 1974, no writ).

Chapter 38 of Texas Civil Practice and Remedies Code addresses the situations in which, contrary to the common law, litigants may recover attorney's fees. Section 38.001 states, "A person may recover reasonable

attorney's fees from an individual or a corporation, in addition to the amount of a valid claim and costs, if the claim is for rendered services, performed labor, furnished material, ... or an oral or written contract." TEX. CIV.PRAC. & REM.CODE ANN. § 38.001 (Vernon 1986).

■ There is some evidence of an agreement between Weldon and Sanders that provided that Weldon would pay for the asphalt to be installed, for additional labor and expenses incurred in improving his property, and would pay adequate draws to Sanders as the job progressed. Sanders' testified that an oral contract existed for labor and materials to repair the road and bridge on the property. The "adequate draws," "additional labor," and Weldon's agreement to pay for supplies are established by Sanders' testimony and Weldon's check stubs. There is also evidence that Weldon called the asphalt supplier to inform it that he would be responsible for payment for the asphalt. We hold there is some evidence of the agreement between Sanders and Weldon. We therefore overrule Weldon's first and fifth points of error alleging no evidence of the contract terms.

■ Weldon correctly asserts that there was no evidence of Sanders' completion of the improvement project. Both Sanders and Weldon testified that Sanders "pulled off the job" and did not complete his work at Oakcrest Farms. However, Sanders testified that he quit working on the job because of Weldon's breach, *i.e.*, failure to pay for materials and services already rendered. Upon Weldon's breach, Sanders was entitled to recover *quantum meruit* damages for breach of an express contract, not based on an implied contract. Because Weldon breached the contract, Sanders' failure to complete the job after Weldon's breach is irrelevant. We therefore overrule Weldon's first and sixth points of error as they relate to Sanders' failure to complete the project.

■ Although requested by McFarlands, the trial court did not grant their motion for instructed verdict on Sanders' fraud and misrepresentation causes of action. However, because the trial court did not submit these issues to the jury, neither fraud nor misrepresentation had any bearing on the jury's verdict or the judgment. Because the trial court's failure to direct a verdict on the fraud and misrepresentation issues had no effect on the verdict or the judgment, we overrule that portion of Weldon's first point of error that complains of the court's failure to instruct a verdict on those issues.

■ Weldon additionally asserts that Sanders is not entitled to attorney's fees because Sanders defaulted in performance of the contract and "there is no basis for attorney's fees to a defaulting party to an express contract." Although Sanders did not complete performance of the contract between himself and Weldon, Sanders did render services, perform labor, and furnish material for the improvement project at Weldon's farm. By obtaining a jury verdict on his claim, Sanders has demonstrated a valid claim sufficient to support the award of attorney's fees. Sanders' counsel, Darren Coleman, testified at trial regarding the amount of attorney's fees incurred by Sanders. Specifically, Coleman testified as to the work that had been done and the amount of time that had been spent on Sanders' case and preparing for trial; the customary fees for attorneys of Coleman's experience in East Texas; and the reasonable and necessary character of the fees prayed for. There was sufficient evidence to support the submission of the attorney's fees issue to the jury. Therefore, we overrule Weldon's first and thirteenth points of error relating to the award of attorney's fees to Sanders.

### *Quantum Meruit* Damage Issue

In his eighth, ninth, tenth, and twelfth points of error, Weldon argues that submission of a *quantum meruit* damage issue to the jury was improper because "the '*quantum meruit*' theory cannot co-exist where there is an express agreement covering all aspects of the work to be performed." We disagree with Weldon's theory of contract damages and will overrule the designated points of error.

■ *Quantum meruit* damages are not inconsistent with an express contract as a

matter of law. As noted above, a litigant may seek *quantum meruit* damages on two different legal theories. First, *quantum meruit* damages are available in the absence of an express contract under the theory of an implied contract. A claimant is entitled to *quantum meruit* damages when he proves that he has rendered a valuable service or furnished materials to a person who accepted, used and enjoyed such services and materials under circumstances in which such person would reasonably expect to pay for the work. *Vortt Exploration Co. v. Chevron U.S.A., Inc.,* 787 S.W.2d 942, 945 (Tex.1990). However, *quantum meruit* damages are also available under a second theory based on express contract. "[R]ecovery in *quantum meruit* is allowed when a plaintiff has partially performed an express contract but, because of the *defendant's* breach, the plaintiff is prevented from completing the contract." (Emphasis added) *Truly v. Austin,* 744 S.W.2d 934, 935 (Tex.1988).

Sanders' claim against Weldon for *quantum meruit* damages clearly falls under the second, or express contract, theory. The trial testimony established an express oral contract between Sanders and Weldon; Weldon's breach of contract; and the uncontested objective value of Sanders' service. We therefore overrule Weldon's eighth, ninth, tenth, and twelfth points of error to the extent that such points state that *quantum meruit* damages are not available for breach of an express contract.

### Evidence Factually Insufficient to Support Submission of Jury Questions

At trial and in points of error five, six, and seven of his brief, Weldon complained of the court's submission of certain jury questions on the basis that a "yes" answer to such questions "would be overwhelming [sic] against the great weight and preponderance of the evidence that it would constitute an unjust answer and should not be allowed." This appears to be an objection that the evidence was factually insufficient to support

the submission of certain questions to the jury.[1] We disagree.

A complaint that the submission of a certain question to the jury is against the great weight and preponderance of the evidence is completely without merit. *Hinote v. Oil, Chemical & Atomic Workers International Union,* 777 S.W.2d 134, 143 (Tex.App.—Houston [14th Dist.] 1989, writ denied). A trial court must submit a question to the jury if there is any probative evidence to support the question. *American Home Assurance Co. v. Brandt,* 778 S.W.2d 141, 144 (Tex.App.—Texarkana 1989, writ denied). A trial court bases its decision to submit jury questions on the basis of legal sufficiency, not factual sufficiency. *Id.*

Weldon's objections to the jury charge on the basis of factual insufficiency were inappropriate. We therefore overrule Weldon's fifth, sixth, and eleventh points of error to the extent that such points complain of the factual insufficiency of the evidence to support the submission of certain jury questions.

### No Pleadings to Support Submission of Jury Questions

In points of error five, six, eleven and twelve, Weldon complains that there were no pleadings to support the trial court's submission of jury questions one, two, six, and seven. However, Weldon has failed to preserve error with respect to any pleading deficiencies.

"A party objecting to a charge must point out distinctly the objectionable matter and the grounds of the objection." Tex. R.Civ.P. 274. A complaint as to a "fault in pleading is waived unless specifically included in the objections." *Id.* The objecting party must raise all objections to the charge prior to submission of the charge to the jury, or the party waives its complaint. *Missouri Pacific Railroad Co. v. Cross,* 501 S.W.2d 868, 873 (Tex.1973).

Weldon first complained that the pleadings were insufficient to support the

---

1. In none of McFarlands' points of error do they specifically allege that the jury's findings were so against the great weight and preponderance of

the evidence as to be clearly wrong and unjust. Therefore, we do not address the factual sufficiency of the jury's findings.

submission of questions one, two, six, and seven in his motion for new trial and appellate brief. Weldon did not bring any pleading deficiencies to the attention of the trial court at the charge conference. Therefore, Weldon has waived his complaint that there were no pleadings to support the submission of certain questions to the jury. Accordingly, we overrule Weldon's fifth, sixth, eleventh, and twelfth points of error to the extent that such points complain of insufficient pleadings to support the charge.

### Improper Jury Questions

In Weldon's second, third, and fourth points of error, Weldon alleges that the trial court erred in refusing to submit certain questions and instructions to the jury. Additionally, Weldon presents various points of error arguing that the trial court submitted issues to the jury that constituted comments on the weight of the evidence, that the submission of certain questions and instructions to the jury was improper and was, therefore, likely to prejudice and confuse the jury and lead to an unjust result, that certain questions were a double submission of the damage issue, and that other questions were improperly conditioned on the answer to a previous question. However, Weldon, in his brief, has not set out the offending part of the charge and presents no argument or authorities in support of his allegations.

An appellant's brief should argue to the court the law and the facts that weigh in the party's favor. "The argument shall include ... such discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue." Tex.R.App.P. 74(f). An appellant's failure to argue a point of error or cite authority in support of a point may constitute waiver. *Lewis v. Texas Utilities Electric Co.*, 825 S.W.2d 722, 726 (Tex.App.—Dallas 1992, writ denied). Additionally, "[i]f complaint is made of any part of the charge given or refused, such part of the charge shall be set out in full." Tex.R.App.P. 74(f).

By failing to comply with Texas Rule of Appellate Procedure 74, McFarlands have waived the referenced complaints. We therefore overrule McFarlands' points of error two through ten to the extent that McFarlands have failed to comply with Rule 74.

Because we determine that there is no evidence to support the trial court's judgment against Richard W. McFarland, Jr., we reverse and render judgment that Sanders take nothing from Richard W. McFarland, Jr. Because there is no reversible error in the court's judgment as it relates to Weldon McFarland, we affirm the remainder of the trial court's judgment.