COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

)
JIMMY GIBSON,                                               )                  No. 08-02-00387-CV
)
                                    Appellant,                        )                             Appeal from
)
v.                                                                          )                  70th District Court
)
BOSTICK ROOFING AND SHEET METAL   )                  of Ector County, Texas
COMPANY,                                                        )
                                                                             ) (TC# A-97,086)
                                    Appellee.                          )

O P I N I O N

            Jimmy Gibson appeals the trial court’s judgment in favor of Bostick Roofing and Sheet Metal
Company (Bostick). Bostick sued Gibson on a sworn account and in the alterative on a theory of
quantum meruit. It also requested foreclosure of its mechanic’s and materialman’s lien. Following
a bench trial, the trial court entered judgment for $5,500, together with interest and attorneys’ fees,
and allowed foreclosure of the lien. We abated the case for entry of findings of fact and conclusions
of law which are now filed of record. We reverse and render.
FACTUAL SUMMARY
            On August 27, 1987, Gibson purchased an apartment complex located in Odessa, Texas from
the Federal Home Loan Mortgage Corporation. The same day, he entered into a contract for deed
to sell the complex to Jim and Mary Nell Brown and Gerald and Johnnie Jones. Mary Nell and
Johnnie are Gibson’s sisters. 
            In 1993, a hailstorm hit Odessa and the roof of the complex was damaged. Jim Brown
(Brown) received an estimate for the repair from Eddie Conner, an estimator and salesman for
Bostick. Brown presented himself to Conner as the owner and advised that insurance would cover
the damage. Conner admittedly took no steps to verify that Brown was indeed the owner of the
property, nor were such steps customary in his business. Conner never dealt with Gibson. 
            Conner first estimated the cost of replacing the roof at $6,450. Because Brown also wanted
to have the roof on his own residence repaired, the price was negotiated down to $5,500 for each
roof. The work on the apartment complex was completed near the end of July 1993. Bostick never
received payment.
            Bostick began sending invoices to Brown. These invoices were prepared by Bostick’s
president Andy Reed, who was responsible for the company’s record keeping and billing. Reed
testified that the invoices were prepared in the regular course of business and were sent on a regular
basis. On February 8, 1994, Reed sent a letter to Brown notifying him that unless the bill was paid,
interest, costs and attorneys’ fees would be added to it. Reed also contacted an attorney to assist him
in collecting the debt. After retaining counsel, Reed realized that Brown was not the only party with
an interest in the property. He soon learned that Gibson was the legal owner while the Browns and
the Joneses were the equitable owners. Reed filed an affidavit for a mechanic’s and materialman’s
lien on March 4, 1994. Gibson was notified of the lien by letter, but Reed couldn’t recall whether
Gibson was notified before the lien was filed. Reed never dealt with Gibson and admitted that he
had no contract whereby Gibson agreed to the repairs or the price. Nevertheless, Reed sued because
Gibson “got value received.”
            Gibson, a resident of Dallas, testified that he didn’t know about the hail storm or that the roof
of the complex needed to be or was being replaced. He explained the transactions by which Brown
owned the apartments and carried insurance on them while Gibson was listed as mortgagee holding
a first lien on the property. Gibson admitted that Brown had a right to procure repairs. In fact, under
the contract for deed, Brown had no obligation to report any property repairs and Gibson had no duty
to inspect the property. He emphasized that Brown did not work for him nor did he have the
authority to negotiate on his behalf. 
            After receiving demand letters, Gibson contacted Brown to inquire about the work. Brown
admitted that he had a new roof put on the apartment complex, that it was covered by insurance, and
that he would take care of everything. Gibson never followed up with the insurance company or his
sisters. He later discovered a problem with the insurance checks that were issued to pay for the
repairs. The checks were sent to the complex, Brown forged Gibson’s name, and cashed the checks. 
Gibson filed a complaint with the district attorney’s office and asked the insurance company to
reissue the checks. The district attorney refused to file charges; the insurance company investigated
and reported that the statute of limitations had expired. 
            On August 23, 1994, the Joneses transferred their interest in the complex to the Browns. In
December 1995, Gibson repossessed the property and the Browns signed a quitclaim deed
transferring their interest. The deed was never recorded. Gibson ultimately sold the property to the
Thompsons on a contract for deed. Bostick filed suit on January 17, 1995.
THE TRIAL COURT’S FINDINGS
Succinctly put, the trial court’s findings of fact were as follows:
• Gibson executed a contract for deed providing for the transfer of the apartment complex
to the Browns and the Joneses.
 
•Gibson admitted that he considered Brown to be an owner of the property who had
authority to contract with Bostick.
 
•On or about May 18, 1993, Brown represented himself to Bostick as the owner and
entered into an agreement whereby Bostick would install a new roof for a price of
$5,500.00.
 
•On or about July 23, 1993, Bostick installed a new roof in accordance with his
agreement.
 
•The reasonable fair market value of the roofing job at the time of installation was
$5,500.00, which remains unpaid.
 
•Gibson was notified in writing that the roofing work had been performed and
Bostick claimed $5,500.00 was due.
 
•On or about December 1995, the complex was deeded back to Gibson.
 
•The reasonable value of the necessary services provided by Bostick’s attorney was
$1,000.00.

The trial court’s conclusions of law were as follows:
 
•Gibson was unjustly enriched in the amount of $5,500.00.
 
•Gibson is indebted to Bostick in the amount of $5,500.00 plus attorney’s fees of
$1,000.00.
 
•The judgment bears interest at the rate of 10% per annum from September 1, 1993,
until paid.

LIABILITY ISSUES
            In his first supplemental point of error, Gibson challenges the legal and factual sufficiency
of the evidence to support the trial court’s finding that Brown had authority to enter into the contract
since the court failed to find that (1) there was a contract between Gibson and Bostick; (2) that
Bostick undertook its repair of the roof for Gibson, the party to be charged; and (3) that Brown was
Gibson’s agent or had authority to directly contract on Gibson’s behalf. Simply stated, Gibson
complains that he cannot be liable for a debt for which he did not contract and of which he knew
nothing at all. He also argues that he cannot be liable under a theory of quantum meruit because the
trial court failed to find that Gibson considered Brown to have authority to act on his behalf. Finally,
he contends that no evidence was offered to show that he was liable under a sworn account or a
quantum meruit theory.
Standard of Review
            In any case tried to the court without a jury, a party may request findings of fact and
conclusions of law. Tex.R.Civ.P. 296. Findings of fact have the same force and dignity of a jury
verdict. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); Franco v. Franco, 81 S.W.3d 319,
332 (Tex.App.--El Paso 2002, no pet.). However, they are not conclusive when a complete
reporter’s record appears in the appellate record. Tucker v. Tucker, 908 S.W.2d 530, 532 (Tex.App.--San Antonio 1995, writ denied). When the trial court acts as a fact finder, its findings are reviewed
under legal and factual sufficiency standards. In re Doe, 19 S.W.3d 249, 253 (Tex. 2000). Although
a trial court’s conclusions of law may not be challenged for factual sufficiency, the appellate
court may review the conclusions drawn from the facts to determine their correctness. Ashcraft v.
Lookadoo, 952 S.W.2d 907, 910 (Tex.App.--Dallas 1997, pet. denied).
            In considering a “no evidence” legal sufficiency point, we consider only the evidence and
inferences that tend to support the findings and disregard all evidence and inferences to the contrary. 
See Weirich v. Weirich, 833 S.W.2d 942, 945 (Tex. 1992); Texas Tech Univ. Health Sciences Ctr.
v. Apodaca, 876 S.W.2d 402, 411-12 (Tex.App.--El Paso 1994, writ denied). If more than a scintilla
of evidence supports the questioned finding, the “no evidence” point fails. See Tseo v. Midland Am.
Bank, 893 S.W.2d 23, 25 (Tex.App.--El Paso 1994, writ denied).
            In reviewing factual sufficiency, we consider all of the evidence, but we do not view it in the
light most favorable to the verdict. See Clewis v. State, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996);
Levario v. State, 964 S.W.2d 290, 295 (Tex.App.--El Paso 1997, no pet.). We will set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. See Levario, 964 S.W.2d at 295. In conducting a factual sufficiency review, the
reviewing court cannot substitute its conclusions for those of the fact finder. See id. It is not within
the province of this court to interfere with the fact finder’s resolution of conflicts in the evidence or
to pass on the weight of credibility of the witnesses’ testimony. See id. Where there is conflicting
evidence, the fact finder’s verdict on such matters is generally regarded as conclusive. See id.
Theory of Quantum Meruit
            Quantum meruit damages are available in two contexts: (1) when a plaintiff has partially
performed an express contract, but because of the defendant’s breach, the plaintiff is prevented from
completing the contract and (2) in the absence of an express contract, under the theory of an implied
contract. McFarland v. Sanders, 932 S.W.2d 640, 646 (Tex.App.--Tyler 1996, no pet.). Here,
quantum meruit damages would have to arise independent of an express contract since Bostick did
not contend that it partially performed a contract that Gibson’s breach prevented from being
completed. See id. In this context, quantum meruit would be based upon an agreement implied by
law to pay for beneficial services rendered and knowingly accepted. Vortt Exploration Co. v.
Chevron U.S.A., Inc., 787 S.W.2d 942, 944 (Tex. 1990). A plaintiff may recover in quantum meruit
when nonpayment for services rendered would “result in an unjust enrichment to the party benefited
by the work.” City of Ingleside v. Stewart, 554 S.W.2d 939, 943 (Tex.Civ.App.--Corpus Christi
1977, writ ref’d n.r.e.). To recover quantum meruit damages, a claimant must prove that: (1) he
rendered valuable services or furnished materials; (2) for the person sought to be charged; (3) such
services and materials were accepted, used and enjoyed by the person sought to be charged; and (4)
under such circumstances as reasonably notified the person sought to be charged that the plaintiff
in performing such services was expecting to be paid by the person sought to be charged. Vortt
Exploration Co., 787 S.W.2d at 944. “To recover in quantum meruit, the plaintiff must show that
his efforts were undertaken for the person sought to be charged; it is not enough to merely show that
his efforts benefitted the defendant.” Economy Forms Corp. v. Williams Brothers Construction Co.,
754 S.W.2d 451, 459 (Tex.App.--Houston [14th Dist.] 1988, no writ).
            Here, to recover under a theory of implied contract, Bostick must show that it undertook the
roof repairs for Gibson. See Economy Forms Corp., 754 S.W.2d at 458; McFarland, 932 S.W.2d
at 643. It is not enough that Bostick demonstrated that Gibson incidentally benefitted from Bostick’s
efforts. See id. Bostick contracted with Brown, Bostick expected Brown to pay for the repairs, and
Bostick had no contact with Gibson. Consequently, there is no evidence that Bostick provided the
repair for Gibson’s benefit. See also McFarland, 932 S.W.2d at 640 (where the court found no
recovery for quantum meruit under a legal sufficiency review against record owner of real property
when it was the owner’s father who contracted for the improvements; the court stated that there was
no evidence that the improvements were undertaken for the record owner or for his benefit). After
reviewing only the evidence and inferences which support the verdict, and disregarding all evidence
and inferences to the contrary, we conclude there was no evidence to support Bostick’s claim. We
sustain Supplemental Point of Error One. Because we have found the evidence legally insufficient,
we need not address Gibson’s factual sufficiency complaint.
 

Sworn Account
            The elements necessary to prove a suit on a sworn account are: (1) a sale and delivery of
goods or services; (2) the charges on account are just, i.e., prices are charged in accordance with
agreement or, in absence of agreement, are usual, customary, and reasonable prices for that good or
service; and (3) the amount remains unpaid. Tex.R.Civ.P. 185. The cause of action must be
supported by the affidavit of the party, his agent or attorney taken before some officer authorized to
administer oaths, to the effect that such claim is, within the knowledge of affiant, just and true, that
it is due, and that all just and lawful offsets, payments and credits have been allowed. Tex.R.Civ.P.
185. Bostick’s affidavit contained all necessary components and was attached to its petition. A
party resisting a sworn claim must comply with the rules of pleading required in any case and must
timely file a written denial, under oath, or he will not be permitted to deny the claim. Tex.R.Civ.P.
93 (10); 185. Gibson did not file a sworn denial.
            However, it is well established that the rule which makes a verified account prima facie
evidence in the absence of a written denial under oath does not apply to transactions between third
parties or parties who were strangers to the transaction. McCamant v. Batsell, 59 Tex. 363 (1883);
Hassler v. Texas Gypsum Co., 525 S.W.2d 53, 54 (Tex.Civ.App.--Dallas 1975, no writ). This
exception has been applied where the plaintiff’s own pleadings--or the invoices or other evidence
exhibited as the basis of the obligation--reflected that the defendant was not a party to the original
transaction. See id. Bostick attached the following documents to its petition: (1) the job estimate
which contained Brown’s name; (2) two invoices addressed to Brown ; (3) a demand letter addressed
to Brown; (4) a letter from its attorney to Gibson notifying him of the materialman’s lien; and (5)
a demand letter from its attorney to Gibson.
            Gibson transferred the apartment complex to Brown under a contract for deed. A contract
for deed is an agreement by a seller to deliver a deed to property once certain conditions have been
met. Black’s Law Dictionary 320 (7th ed. 1999). These contracts, also referred to as “land sale
contracts” or “contracts of sale,” typically provide that upon making of a down payment, the buyer
is entitled to immediate possession of the property; however, title remains in the seller until the
purchase price is paid in full. Graves v. Diehl, 958 S.W.2d 468, 470-71 (Tex.App.--Houston [14th
Dist.] 1997, no pet.); Black’s Law Dictionary 320 (7th ed. 1999). The purchase price is typically
paid in installments over a course of years. Id. at 471.
            Bostick argues that Gibson could not be a stranger to the account since the trial court
determined, based on evidence offered at trial, that Gibson had placed Brown in a position of
apparent authority. Alternatively, Bostick argued that Gibson ratified Brown’s unauthorized act 
because Gibson was a named insured and Brown told him the roof repair would be covered by
insurance proceeds, and because Gibson allowed Brown to handle the matter. However, Bostick
ultimately admitted that it was not contending that Brown was Gibson’s agent. 
Apparent Authority 
            Contrary to Bostick’s contention, the trial court did not find that Brown had apparent
authority to contract on behalf of Gibson. An “agent” is one who is authorized by another to transact
business or manage some affair for him. Neeley v. Intercity Management Corp., 732 S.W.2d 644,
646 (Tex.App.--Corpus Christi 1987, no writ); Jorgensen v. Stuart Place Water Supply Corp., 676
S.W.2d 191, 194 (Tex.App.--Corpus Christi 1984, no writ). Apparent authority “may arise either
from a principal knowingly permitting an agent to hold herself out as having authority or by a
principal’s actions which lack such ordinary care as to clothe an agent with the indicia of authority,
thus leading a reasonably prudent person to believe that the agent has the authority she purports to
exercise.” Ames v. Great S. Bank, 672 S.W.2d 447, 450 (Tex. 1984). “[A] prerequisite to a proper
finding of apparent authority is evidence of conduct by a principal, relied upon by the party asserting
apparent authority, which would lead a reasonably prudent person to believe an agent had authority
to act for the principal.” Campbell v. C.D. Payne & Geldermann Sec., 894 S.W.2d 411, 422
(Tex.App.--Amarillo 1995, writ denied). “A court may consider only the conduct of the principal
leading a third party to believe the agent has authority in determining whether an agent has apparent
authority.” Sociedad De Solaridad Soc. “El Estillero” v. J.S. McManus Produce Co., 964 S.W.2d
332, 334 (Tex.App.--Corpus Christi 1998, no pet.). Bostick did not know that Gibson was the record
owner of the property until after it had completed its work and Brown had failed to pay the invoice. 
Accordingly, Bostick cannot argue that it relied upon conduct by Gibson that would lead a
reasonably prudent person to believe that Brown had authority to act on his behalf. See Campbell,
894 S.W.2d at 422. Since the court may only consider Gibson’s conduct in determining whether a
third party could reasonably believe that Brown had authority, there is no evidence of apparent
authority. 
Actual Authority
            Actual authority of an agent may arise as a result of conduct by the principal that intentionally
or negligently allows the agent to believe he has been given actual authority to represent the
principal. Austin Area Teachers Federal Credit Union v. First City Bank-Northwest Hills, N.A., 825
S.W.2d 795, 799 (Tex.App.--Austin 1992, writ denied). If a party holds out another to be its agent
in a certain matter, or has knowingly permitted him to act as such agent, the authority of the agent
to act will be presumed in so far as the rights of third persons are concerned. Wink v. Wink, 169
S.W.2d 721, 723 (Tex.Civ.App.--Galveston 1943, no writ). The agency relationship does not depend
upon express appointment or assent by the principal; rather, it may be implied from the conduct of
the parties under the circumstances. Jorgensen, 676 S.W.2d at 194; Dallas Heating Co. v. Pardee,
561 S.W.2d 16, 20 (Tex.Civ.App.--Dallas 1977, writ ref’d n.r.e.). The fact of agency may be
established by circumstantial evidence, and proof may be made of all the facts and circumstances
that shows the relationship of the parties and throws light upon the character of such relations. 
Welch v. Coca-Cola Enterprises, Inc., 36 S.W.3d 532, 540 (Tex.App.--Tyler 2000, pet. withdrawn). 
            Here, there is no evidence that Gibson intentionally or negligently allowed Brown to believe
he was given actual authority to contract on Gibson’s behalf nor any evidence that he held Brown
out as his agent. See Austin Area Teachers, 825 S.W.2d at 799; Wink, 169 S.W.2d at 723. To the
contrary, Gibson testified that Brown did not work for him and had no authority to negotiate on his
behalf. Thus, Brown had no actual authority to bind Appellant.
Ratification
            The elements of ratification are: (1) approval by act, word, or conduct; (2) with full
knowledge of the facts of the earlier act; and (3) with the intention of giving validity to the earlier
act. Motel Enterprises, Inc. v. Nobani, 784 S.W.2d 545, 547 (Tex.App.--Houston [1st Dist.] 1990,
no writ). Bostick argues that Gibson ratified the contract by allowing Brown to take care of the
matter. We disagree. Gibson called Brown after receiving a demand for payment for the repairs. 
Brown told him that he had procured roof repairs, that the repairs were covered by insurance, and
that he would take care of the payment. There is no evidence that Gibson had full knowledge of the
earlier act taken by Brown or that he intended to validate the act. See Motel Enterprises, Inc., 784
S.W.2d at 547. 
            We find no apparent or actual authority for Brown to contract on behalf of Gibson, nor do
we find ratification. Gibson was not a party to the original transaction in which Brown received the
estimate and Bostick completed the work. As a stranger to the account, Gibson did not need to file
a verified denial to the sworn account. Gibson’s Original Point of Error Three is also sustained.
FORECLOSURE OF CONSTITUTIONAL OR STATUTORY LIEN
            Gibson contends that Bostick’s constitutional lien was invalid because Bostick failed to meet
the requirements under Texas Constitution, Article 16, section 37. He also suggests that the statutory
lien was invalid because Bostick failed to comply with perfecting requirements under Texas Property
Code Section 53.001. Bostick counters that Gibson’s arguments constitute affirmative defenses
which must be affirmatively pled under Texas Rule of Civil Procedure 94.


 Alternatively, Bostick
maintains that it had a valid constitutional lien because the trial court found that Brown had
“apparent authority” to enter into the contract.
Constitutional Lien Under Article 16, section 37
            Gibson claims that Bostick does not have a valid lien under article 16 because (1) Bostick
was a subcontractor and not the original contractor; (2) there was no privity of contract between
Gibson and Bostick; and (3) Gibson, not Brown, was the record owner for purposes of fixing a lien. 
In any foreclosure suit, the plaintiff must establish the existence of a valid obligation owing to him
by the defendant because foreclosure is merely a method of assuring payment of the plaintiff’s claim. 
Hagan v. Anderson, 506 S.W.2d 298, 302 (Tex.Civ.App.--San Antonio 1973, writ ref’d n.r.e.). 
Article 16, section 37 provides as follows: 
Mechanics, artisans and material men, of every class, shall have a lien upon the
buildings and articles made or repaired by them for the value of their labor done
thereon, or material furnished therefor; and the Legislature shall provide by law for
the speedy and efficient enforcement of said liens.

Tex.Const. art. 16, § 37. If an owner contracts with a person to furnish labor or materials to
improve his property and does not pay for it, then the laborer or materialman is entitled to assert his
right against the property which he improved by his efforts or materials. Rhoades v. Miller, 414
S.W.2d 942, 943 (Tex.Civ.App.--Tyler 1967, no writ). This section creates a lien when there is a
contract to repair a building and material or labor is furnished by the original contractor to the owner. 
Rhoades, 414 S.W.2d at 944. This lien is self-executing, but it does not apply to subcontractors, who
are derivative claimants. See id.; Berger Engineering Co. v. Village Casuals, Inc., 576 S.W.2d 649,
652 (Tex.Civ.App.--Beaumont 1978, no writ). Further, this provision does not give a lien to those
who have no privity of contract with the owner. Wiseman Hardware Co. v. R. L. King Const. Co.,
387 S.W.2d 79, 81 (Tex.Civ.App.--Dallas 1965, no writ). 
Original Contractor versus Subcontractor
            Gibson argues that Bostick was a subcontractor because the lien affidavit signed by Reed
provides that Brown was the original contractor. Due to an absence of definitions for “contractor”
and “subcontractor” under the constitution, we will utilize those from the Property Code included
under materialman’s liens. “Original contractor” means a person contracting with an owner either
directly or through the owner’s agent. Tex.Prop.Code Ann. § 53.001(7)(Vernon Supp. 2004). 
“Subcontractor” means a person who has furnished labor or materials to fulfill an obligation to an
original contractor or to a subcontractor to perform all or part of the work required by an original
contract. Id. at § 53.001(13). 
Privity of Contract 
            We must also look at whether the evidence established privity of contract between the owner
and Bostick. The trial court did not find a contract between Gibson and Bostick that would establish
privity. Instead, the court found that a contract existed between Bostick and Brown. Nor do the
findings identify an agency relationship between Gibson and Brown. Bostick maintains that the trial
court found privity of contract, as reflected by its comment on the record that “Brown was put in a
position of at least apparent authority to enter into an agreement.” Oral comments from the bench
do not constitute findings of fact and conclusions of law. In re Doe 10, 78 S.W.3d 338, 340 n.2
(Tex. 2002); Roberts v. Roberts, 999 S.W.2d 424, 440 (Tex.App.--El Paso 1999, no pet.). As for
Bostick’s argument that Gibson admitted that Brown had the authority to enter the contract, the
record reveals Gibson admitted that Brown had actual authority to enter into contracts on his own
behalf, not to enter into contracts on behalf of Gibson.
            Further, “a person in possession of land under a written contract to purchase is not, within
the meaning of such statutes as those under which the persons claiming liens assert rights, the owner
of the land or of the improvements he may place on it, and for this reason cannot fix a lien on either.” 
Galveston Exhibition Ass’n v. Perkins, 15 S.W. 633, 634-35 (Tex. 1891). “Whether the lien be
created by statute, or directly by the constitution, ownership of the property and a contract binding
upon the owner are indispensable.” Bledsoe v. Colbert, 120 S.W.2d 909, 910 (Tex.Civ.App.--Eastland 1938, no writ). In addition, where the contract for labor, materials or construction is not
made with the owner or his duly-authorized agent, a lien may not by fixed on his property. Kelly v.
Heimer, 312 S.W.2d 430, 434 (Tex.Civ.App.--San Antonio 1958, writ ref’d n.r.e.). 
            The record reveals that Brown was merely an equitable owner of the property under a
contract for deed, that Gibson held legal title to the property, and that Bostick contracted only with
Brown. Because the record does not establish that Brown was Gibson’s agent, there was no privity
of contract between Gibson and Bostick. Consequently, Brown could not fix a lien on the property. 
Accordingly, without deciding whether Brown was the original contractor or subcontractor, we
conclude that Bostick did not possess a valid constitutional lien. 
Statutory Lien Under Property Code § 53.001 et seq.
            Gibson maintains that Bostick did not have a valid statutory lien because it failed to follow
the perfecting requirements under the Texas Property Code by not filing the lien affidavit until nearly
eight and a half months after the accrual of the indebtedness and by not sending notices to the
original contractor and owner.
            A person has a lien if (1) he “furnishes labor or materials for construction or repair” to a
house, building, or improvement, or (2) “furnishes the labor or materials under or by virtue of a
contract with the owner or the owner's agent, trustee, receiver, contractor, or subcontractor.” 
Tex.Prop.Code Ann. § 53.021(a)(Vernon Supp. 2004). However, where a contract for materials,
labor and construction is not made with the owner or his duly-authorized agent, the owner of land
may not be held liable personally, nor may a lien be fixed on his land. Kelly, 312 S.W.2d at 434. 
One merely in possession under a contract to purchase is not the owner of the land and cannot create
a mechanic’s lien on it; only the owner or his agent may make contracts fixing liens on lands and
buildings. Wilkerson & Satterfield v. McMurry, 167 S.W. 275, 278 (Tex.Civ.App.--Dallas 1914, no
writ). A contractor’s and materialman’s lien relates back to the inception of the contract, and the
time when the first material was furnished, as against the immediate parties to, or those having prior
notice of, the contract, but cannot be established against the landowner without his knowledge or
consent, nor predicated on a mere executory contract of purchase between others. McCallen v.
Mogul Producing & Refining Co., 257 S.W. 918, 922 (Tex.Civ.App.--Galveston 1923, writ dism’d
w.o.j.). 
            Our courts have long held that a mechanic’s lien attaches to the interest of the person
contracting for construction. Diversified Mortg. Investors v. Lloyd D. Blaylock General Contractor,
576 S.W.2d 794, 805 (Tex. 1978). Thus, if a lessee contracts for construction, the mechanic’s lien
attaches only to the leasehold interest, not to the fee interest of the lessor. Grube v. Nick’s No. 2, 278
S.W.2d 252, 253 (Tex.Civ.App.-- El Paso 1955, writ ref’d n. r. e). Similarly, a mechanic’s lien may
attach to an equitable interest of one holding an option on land, but the lien is extinguished if the fee
is not obtained by the optionee. Diversified Mortg. Investors, 576 S.W.2d at 805, citing Kelly, 312
S.W.2d at 430. 
            Bostick had no contract with Gibson and neither the evidence nor the trial court’s findings
establish an agency relationship between Gibson and Brown. Consequently, Bostick could not attach
a mechanic’s lien to Gibson’s interest. See Diversified Mortg., 576 S.W.2d at 794. While the lien
could have attached to Brown’s equitable ownership interest, the lien was extinguished when Brown
defaulted on his payments and Gibson repossessed the property. See Kelly, 312 S.W.2d at 434. 
            Moreover, Bostick failed to comply with the statutory requirements for fixing a statutory lien. 
The statute provides that “the person claiming the lien must file an affidavit with the county clerk
of the county in which the property is located . . . not later than the 15th day of the fourth calendar
month after the day on which the indebtedness accrues.” Tex.Prop.Code Ann. § 53.052(a)(Vernon
Supp. 2004). Indebtedness to an original contractor accrues “on the last day of the month in which
the original contract has been completed,” or to a subcontractor, who has furnished labor or material
to an original contractor, indebtedness accrues on the last day of the last month in which the labor
was performed or the material furnished. Tex.Prop.Code Ann. § 53.053(b)(Vernon Supp. 2004). 
The repairs were completed around July 23, 1993, so that the indebtedness accrued the last day
of July 1993. See Tex.Prop.Code Ann. § 53.053(b). Bostick filed its affidavit of lien on March 4,
1994. It had until the fifteenth day of the fourth calendar month after the day on which the
indebtedness accrued to file its affidavit--November 15, 1993. See Tex.Prop.Code Ann. § 53.052. 
Because Bostick failed to comply with the statutory requirements, the statutory lien was invalid. 
Conclusion
            Having concluded that there is no evidence that Bostick could affix either a valid
constitutional or statutory lien upon Gibson’s interest in the complex, foreclosure of the lien was
improper. We sustain Supplemental Point of Error Two and Original Points of Error One and Two.



ATTORNEY’S FEES
            In its Original Point of Error Four, Gibson complained that Bostick was not entitled to
attorney’s fees because it did not have a valid lien and because it failed to tender any evidence of
reasonable and necessary attorney’s fees. Inasmuch as there is no valid theory upon which the award
can prevail, we sustain this issue as well. 
            Accordingly, the judgment of the trial court is reversed and rendered that Bostick take
nothing.
 

August 19, 2004                                              
                                                                        ANN CRAWFORD McCLURE, Justice

Before Panel No. 4
Barajas, C.J., Larsen, and McClure, JJ.