NUMBER 13-04-663-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


SYNAGRO OF TEXAS-CDR, INC.

D/B/A CDR ENVIRONMENTAL, INC., Appellant,


v.
 


AON RISK SERVICES OF TEXAS, INC., Appellee.

 


On appeal from the 24th District Court 


of Jackson County, Texas.


 


 MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza 


Memorandum Opinion by Justice Rodriguez



 Appellant, Synagro of Texas-CDR, Inc. d/b/a CDR Environmental, Inc.
(Synagro), appeals the amount of damages awarded appellee, Aon Risk Services of
Texas, Inc. (Aon Risk), on its breach of contract counterclaim. By four issues, Synagro
challenges the sufficiency of the evidence. We affirm.

I. Background


 Synagro is a Texas-based waste management company, and Aon Risk is a
commercial insurance broker. Aon Risk served as Synagro's broker of record and
obtained insurance from Reliance National Indemnity Company (Reliance) for Synagro
in 1998 and 1999, and replacement insurance from XL Insurance Company (XL) in
2000. (1) Reliance and XL billed Aon Risk for Synagro's insurance. Aon Risk then billed
Synagro for the cost of the insurance plus its commission. It is undisputed that
Synagro did not pay Aon Risk $316,546.41, a figure that includes the amount billed
by XL or its broker, ECS, for the replacement insurance and Aon Risk's commission
on that amount. It is also undisputed that Aon Risk did not pay for the amount XL or
ECS billed for Synagro's replacement insurance.

 Synagro filed suit against Aon Risk alleging Aon Risk was responsible for
contingent expenses that Synagro might incur in the future as a result of Reliance's
downgraded financial rating and its liquidation, and as a result of a 1999 Synagro
accident involving one of Synagro's tractor-trailer rigs. It also alleged that Aon Risk
failed to obtain cut-through endorsements on Synagro's expired 1998-1999
insurance. (2) A jury found that Aon Risk was not responsible for Synagro's alleged
damages, and a take nothing judgment was entered against Synagro on its claims
against Aon Risk. Synagro has not appealed this aspect of the underlying case.

 However, Aon Risk filed a counterclaim against Synagro to collect
$316,567.41, the amount Aon Risk billed for the replacement insurance
($270,752.65) and the value of Aon Risk's commission ($45,814.76) for obtaining
the insurance, which Synagro refused to pay. The jury found Synagro breached its
contract with Aon Risk and awarded Aon Risk $316,000 on its counterclaim. (3) On
appeal, Synagro does not contest the amount of Aon Risk's commission ($45,814.76)
or the amount paid for insurance after September 2000 ($19,889.16). Synagro is
challenging the $250,863.49 awarded as damages for insurance billed before
September 2000. (4)

II. Analysis



 By four issues, Synagro contends that the evidence was legally and factually
insufficient to support the $250,863.49 awarded as damages. Synagro first argues
that because Aon Risk never paid that amount to XL, and XL never sued Aon Risk for
it, and the statute of limitations has run, Aon Risk does not legally have to pay the
$250,863.49 to XL. Secondly, Synagro claims that in order to mitigate damages, Aon
Risk should make at least a reasonable effort to minimize its damages, and that raising
the statute of limitations affirmative defense as to the $250,863.49 requires only a
reasonable effort. Synagro's contentions, however, are based on a future limitations
defense that would be available to Aon Risk, not Synagro, should XL sue Aon Risk
under a separate contract, and mitigation efforts that Aon Risk, not Synagro, might
utilize. Moreover, Synagro did not present any evidence that it was a third-party
beneficiary to Aon Risk's contract with XL or that Synagro otherwise had any rights
under that contract. Without presenting authority to support its arguments, and
because we find none, these arguments fail.

 Having concluded that Synagro's limitations and mitigation arguments fail, we
further conclude that the evidence is legally and factually sufficient to support the
amount awarded as damages. "The universal rule for measuring damages for the
breach of a contract is just compensation for the loss or damage actually sustained." 
Adams v. H & H Meat Products, Inc., 41 S.W.3d 762, 779 (Tex. App.-Corpus Christi
2001, no pet.) (citing Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991)). When
a party performs a contract for which another party agreed to pay a certain sum of
money, the party performing the contract may recover the contract price in a breach
of contract action. McFarland v. Sanders, 932 S.W.2d 640, 644 (Tex. App.-Tyler
1996, no writ) (citing Swansey v. Lightfoot, 450 S.W.2d 755, 757 (Tex. Civ.
App.-Corpus Christi 1969, no writ)). Citing to Lafarge Corp. v. Wolff, Inc., 977
S.W.2d 181, 187 (Tex. App.-Austin 1998, pet. denied), Synagro argues that Aon
Risk's proper measure of damages is its lost profits not the contract price. However,
the contract in Lafarge involved future performance, thus, lost profits was the proper
measure in that instance. Id. at 187-88. Aon Risk's counterclaim and damages
involved past performance that Synagro had already enjoyed, for which Aon Risk was
entitled to payment. Thus, Synagro's argument and its reliance on Lafarge is
misplaced.

 In this case, Thomas Francis testified that the amount due and owing to Aon
Risk was $316,567.41. The amount was due on short-term policies written to replace
the Reliance insurance. Francis testified that the damages Aon Risk suffered took into
account credits on the account, including a returned premium on a bond and an
overpayment by Synagro of other invoices. The amount due to Aon Risk included
commissions for Aon Risk and payments due to XL. The insurance and invoices were
for prior years, not future years. The first page of Defense Exhibit 15, a business
record accounting of the total amount due to Aon Risk from Synagro, reflected
$328,508.41 due and owing, a portion of which included a policy premium of
$11,941 owed to Reliance which Aon Risk discounted due to Reliance being in
liquidation and no longer accepting policy premiums, leaving a balance of $316,
567.41. Aon Risk's evidence of damages was further supported by Synagro's
admission that it did not pay Aon Risk. The jury awarded Aon Risk $316,000.

 Reviewing the evidence in the light most favorable to the verdict and
disregarding all contrary evidence that a reasonable jury could have disbelieved, we
conclude that there is more than a scintilla of evidence to support the damages
awarded; thus, the evidence is legally sufficient. See City of Keller v. Wilson, 168
S.W.3d 802, 807, 810 (Tex. 2005). Moreover, evaluating Synagro's
factual-sufficiency challenge and reviewing the entire record in a neutral light, we
conclude that the evidence supporting the contested damage award is not so contrary
to the great weight and preponderance of the evidence as to be manifestly unjust,
shock the conscience, or clearly demonstrate bias. See Columbia Rio Grande Reg'l
Healthcare, L.P. v. Hawley, 188 S.W.3d 838, 853 (Tex. App.-Corpus Christi 2006)
(citing Golden Eagle Archery, Inc. v. Jackson, 116 S.W.3d 757, 761-62 (Tex. 2003)). 
Synagro's four issues challenging the sufficiency of the evidence are overruled.

III. Conclusion


 We affirm the judgment of the trial court.

 

 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and 

filed this 4th day of January, 2007.
1. Reliance and XL provided insurance and replacement insurance, respectively, to Synagro
through Aon Risk. In August 2000, anticipating Reliance's future liquidation, Aon Risk secured
replacement insurance from XL for all policies except worker's compensation. ECS was XL's broker. 
Neither the insurance companies nor ECS were parties to the underlying suit.
2. A cut-through endorsement obligates a reinsurer, who has no policy directly with an insured like
Synagro, to pay the insured directly in the event there is a loss on the insurance policy that has been
reinsured.
3. The jury responded, "Yes," to the question, "Do you find that Synagro failed to comply with
an agreement, if any, to pay Aon Risk for insurance and bonds that Aon Risk brokered for Synagro in
2000?" It also answered "$316,000.00" to the question, "What sum of money, if any, if paid now in
cash, would fairly and reasonably compensate Aon Risk for its damages, if any, that resulted from such
failure to comply?" The jury was instructed not to add any amount for interest on damages and not to
include any amount it found Aon Risk could have avoided by the exercise of reasonable care.
4. We acknowledge that the amounts reflected in the opinion, the pleaded amounts, total more
than the jury award of $316,000. However, the discrepancy is not relevant to the disposition of the
issues before this Court. See Tex. R. App. P. 47.1 (providing that the court of appeals addresses issues
necessary to final disposition of the appeal).