**ECONOMY FORMS CORPORATION, Appellant,**

v.

**WILLIAMS BROTHERS CONSTRUCTION COMPANY, INC., Appellee.**

**No. C14–87–00384–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

July 7, 1988.

Robert M. Corn, Houston, for appellant.

Patrick Zummo, Houston, for appellee.

Before JUNELL, SEARS and CANNON, JJ.

## OPINION

SEARS, Justice.

This is an appeal from a summary judgment in favor of Appellee in a suit for damages for breach of a construction contract. We affirm.

This dispute arises out of the construction of the Houston Ship Channel Toll Bridge, a project of the Texas Turnpike Authority. There are a number of parties involved in the controversy and the complex factual situation requires an explanation of the relationships between these parties and the various litigation arising from their disagreements. Under the Texas Turnpike Authority's Contract No. HSC–19, Williams Brothers Construction Company, Inc. ("Williams Brothers") was the general contractor on the main span of the bridge over the Houston Ship Channel. The main span was built in two phases. The first phase was the contruction of the substructure, the four vertical concrete piers that would support the span. The second phase was the construction of the superstructure, the portion carrying the roadway across the ship channel. The piers were constructed out of concrete reinforced by steel bars. The concrete superstructure was reinforced with cables placed under extreme tension, requiring specialized "traveler" forms and personnel skilled in erecting and moving them.

Williams Brothers hired two subcontractors to complete this construction work. The Prescon Corporation ("Prescon") was to provide the specialized forms and crews for reinforcing the superstructure. Falcon Construction Company ("Falcon"), under Williams Brothers' subcontract No. 190–2 ("the subcontract"), was to prepare the site, construct the substructure piers and place and finish the superstructure concrete. Williams Brothers supplied the construction materials and much of the equipment used by these two subcontractors. Falcon was designated in its subcontract as Williams Brothers' representative for coordination of the work on the project because Falcon personnel would be present on the site throughout the construction on the project. The Falcon subcontract included a customary "retainage" agreement which allowed Williams Brothers to retain up to five percent of each progress payment to Falcon. This retainage was to be held until the work was completed and was subject to offsets for debts owed by Falcon to Williams Brothers. Williams Brothers retained $401,073.74 pursuant to this provision. The subcontract further provided that if Williams Brothers or its bond were subjected to claims from Falcon's suppliers, the retainage could be withheld in an amount and for such time as necessary to protect Williams Brothers.

Falcon executed a lease agreement with Appellant, Economy Forms Corporation, ("Economy"), for the rental of forms to be used in constructing the subsurface piers. Falcon executed three subsequent lease agreements and a purchase order with Economy for additional forms. During the construction of the substructure, Falcon experienced a series of problems which caused it to fall behind schedule. Falcon attributed part of its delay to the quality of the Economy forms and refused to pay the full amount of the rental price charged by Economy. As a result, Economy notified Williams Brothers that Falcon had not paid all rentals due, attached their invoices to Falcon to these notice letters, and asserted a claim against the payment bond provided by Williams Brothers to protect such claimants. However, Appellant failed to comply with the notice requirements of the MacGregor Act, TEX.REV.CIV.STAT.ANN. art. 5160 and has now apparently abandoned its claim against the bond.

Falcon subsequently sued Economy in federal court and sued Williams Brothers in state court. Falcon filed its suit against Economy on March 18, 1982, in the United

States District Court for the Southern District of Texas, Houston Division. There, Falcon sought a judicial determination that it owed no rent to Economy beyond what it had already paid, and it sought damages from Economy for breach of warranty and for filing a false claim with Williams Brothers to prevent the release of the contract retainage to Falcon. Economy counterclaimed for breach of the lease agreements. On October 15, 1985, the court denied the relief sought by Falcon and found Falcon in breach of the Economy contracts. Economy was awarded damages in the amount of $345,891.05, attorneys' fees, interest and costs. The Fifth Circuit affirmed the finding that Falcon had breached its contracts with Economy, affirmed the award of damages for breach of contract, interest and costs, and remanded the award of attorneys' fees for further consideration. *Falcon Construction Co. v. Economy Forms Corp.*, 805 F.2d 1229 (5th Cir.1986). This portion of the lawsuit is still pending in the federal district court. Falcon did not file a bond to supercede execution of the judgment in favor of Economy; therefore, Economy obtained a writ of garnishment against Williams Brothers ordering Williams Brothers not to pay any debts to Falcon or deliver any effects to Falcon. This writ of garnishment is still in force.

Falcon filed its lawsuit against Williams Brothers in the 80th Judicial District Court of Harris County, Texas, alleging breach of contract, misrepresentation and sought the payment of the $401,073.74 retained under the subcontract. Williams Brothers counterclaimed and both parties requested an award of attorneys' fees. Economy intervened in this suit on August 15, 1983, asserting an interest in the retainage based on its breach of contract claims asserted as a counterclaim against Falcon in the federal lawsuit. Economy also asserted direct claims against Williams Brothers. It asserted that it had notified Williams Brothers of the unpaid rentals, that it was a third party beneficiary to the indemnity provisions in Subcontract No. 190–2 between Williams Brothers and Falcon, that TEX.REV.CIV.STAT. 5472e required the retainage to be held in trust by Williams Broth-

ers for Economy's benefit, and that Williams Brothers would be unjustly enriched if Economy was not paid the funds retained by Williams Brothers under the subcontract. Economy also asserted that Falcon would be unjustly enriched.

After the federal court entered its judgment, Economy amended its plea in intervention to apprise the state court of the terms of the judgment and nonsuited its causes of action against Falcon. Economy moved that its action against Williams Brothers be tried separately, after the action between Falcon and Williams Brothers. The court granted this motion on March 11, 1986.

The lawsuit between Falcon and Williams Brothers resulted in a jury verdict awarding certain elements of damages to both parties. The trial court considered these damage findings and the amount of the contract retainage and determined that Williams Brothers owed Falcon $301,-595.56. The court ordered this amount paid into the registry of the court to be held there until a final order or judgment was entered on the writ of garnishment in the federal lawsuit.

In the separate action between Economy and Williams Brothers, Williams Brothers filed its first amended answer to Economy's plea in intervention asserting defenses of limitations and inadequate notice of Economy's MacGregor Act claims. Williams Brothers also moved for summary judgment on all of Economy's claims. After a hearing, the court granted the motion for summary judgment and incorporated in the judgment the results of the trial between Falcon and Williams Brothers and the summary judgment hearing. This judgment was signed on January 16, 1987. Economy's action against Williams Brothers was severed on April 14, 1987. The judgment as to Falcon is now final. Economy's motion for new trial was denied March 20, 1987. This appeal is from the summary judgment in favor of Williams Brothers on Economy's claims against Williams Brothers.

Pursuant to the judgment in the action by Falcon against Williams Brothers,

Williams Brothers paid $301,595.56 plus accumulated post-judgment interest into the registry of the court. At that time, Williams Brothers also filed a petition in interpleader naming Falcon, Economy, the United States Internal Revenue Service and Falcon's attorney as defendants. That suit, styled *Williams Brothers Construction Co., Inc. v. Falcon Construction Co., et al.* No. 87–19785, was in the 295th Judicial District Court of Harris County, Texas. However, it was removed by the Internal Revenue Service to the United States District Court for the Southern District of Texas, Houston Division where it is presently pending under cause No. H–87–1673. Thus, there are currently three federal actions pending in addition to this state court appeal.

While it appeared from Economy's appellate brief that it was asserting error in the trial court's judgment as to the entire $401,073.74 retained by Williams Brothers, Economy's attorney represented to this court during oral argument that the appeal is limited to the amount allowed by the court to be withheld by Williams Brothers as an offset under the retainage agreement for liquidated damages and attorneys' fees. Economy asserts that the trial court determined that Williams Brothers was entitled to withhold this amount from Falcon, but did not determine Economy's right to recover this amount directly from Williams Brothers; therefore, they allege the summary judgment was improper.

Economy asserts three points of error in this appeal. In its first point of error, Economy contends the trial court erred in granting Williams Brothers' Motion for Summary Judgment because Economy was a third party creditor beneficiary of Subcontract No. 190–2 as a matter of law.

The portion of the subcontract upon which Economy relies reads as follows:

*7.1.* Each month, within ten (10) days after Contractor receives its monthly progress estimate from the Owner covering the preceding month's work, Contractor shall submit to Subcontractor a statement of the work performed by Subcontractor during that preceding month based upon said Owner's monthly progress estimate. Any amounts shown due to Subcontractor by said monthly statement shall be paid to Subcontractor within five (5) days after the receipt by Contractor of its payment for that month from Owner, provided Subcontractor's then progress of work and payments for material, equipment, supplies, labor and other expenses incurred by Subcontractor in connection with the work hereunder have been satisfactory in Contractor's sole judgment; and provided further that Contractor may, at its option, retain five per cent (5%) or the same percentage specified in the Contract Documents, of each estimate payment due Subcontractor, until the final payment hereunder, and also provided that Contractor may, at its option, retain such amounts as it determines are sufficient to cover any claims against Subcontractor that have been asserted or filed against Contractor or Contractor's bond, as well as the amounts of any such claims paid by Contractor together with any other amounts or debts due Contractor by Subcontractor.

The intention of the parties to the contract is of controlling significance in determining whether a third party may enforce a contract provision. *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d 501, 503 (Tex.1975); *Banker v. Breaux,* 133 Tex. 183, 128 S.W.2d 23, 24 (Tex.Comm'n. App.1939, opinion adopted). We must begin with the presumption that parties contract for themselves and we will not construe a contract as having been made for the benefit of third parties unless it clearly appears that this was the intention of the parties to the contract. *Corpus Christi Bank & Trust v. Smith,* 525 S.W.2d at 503–504; *Citizens Nat. Bank v. Texas & P. Ry. Co.,* 136 Tex. 333, 150 S.W.2d 1003, 1006 (1941), *cert. denied,* 314 U.S. 656, 62 S.Ct. 109, 86 L.Ed. 526 (1941). This court will construe the language used in the contract by determining how the "reasonable man" would have used and understood such language, considering the circumstances surrounding its negotiation and keeping in mind the purposes intended to

be accomplished by the parties when entering into the contract. *Manzo v. Ford*, 731 S.W.2d 673, 676 (Tex.App.—Houston [14th Dist.] 1987, no writ); *Skyland Developers, Inc. v. Sky Harbor Assoc.*, 586 S.W.2d 564, 570 (Tex.Civ.App.—Corpus Christi 1979, no writ); *Stitt v. Royal Park Fashions, Inc.*, 546 S.W.2d 924, 926 (Tex.Civ.App.—Dallas 1977, writ ref'd n.r.e.). In ascertaining the intention of the parties, the contract must be examined in its entirety and all of its provisions must be considered and construed together. *Smart v. Tower Land and Inv. Co.*, 597 S.W.2d 333, 337 (Tex. 1980); *Citizens Nat. Bank v. Texas & P. Ry. Co.*, 150 S.W.2d at 1006.

■ A third party is entitled to recover upon a contract made between other parties only if the parties intended to secure some benefit to that third party, *and* only if the contract was entered into directly and primarily for the third party's benefit. *Dairyland County Mutual Ins. Co. of Texas v. Childress*, 650 S.W.2d 770, 775 (Tex.1983); *Republic National Bank v. National Bankers Life Insurance Co.*, 427 S.W.2d 76, 79 (Tex.Civ.App.—Dallas 1968, writ ref'd n.r.e.). One is a creditor beneficiary if no intent to make a gift appears from the terms of the agreement, the agreement was entered into for his benefit, and performance of the agreement will satisfy an actual or asserted duty of the promisee to the beneficiary. *Mary Ellen Sandlie Trust v. Pioneer Nat. Title Ins. Co.*, 648 S.W.2d 761, 762 (Tex.App.—Corpus Christi 1983, no writ).

Texas courts have consistently denied the claims of third party beneficiaries to funds retained under construction contracts by materialmen and laborers. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d at 504; *Citizens Nat. Bank v. Texas & P. Ry. Co.*, 150 S.W.2d at 1006–1007; *Scarborough v. Victoria Bank & Trust Co.*, 250 S.W.2d 918, 923 (Tex.Civ.App.—San Antonio 1952, writ ref'd). However, Appellant argues that this case is distinguishable because the subcontract at issue here uses the word "cover" in paragraph 7.1 to show the parties' intent that Williams Brothers would not only retain a portion of the funds otherwise payable to Falcon, but would also pay those funds to third parties who asserted claims against Falcon or Williams Brothers. We disagree.

■ We find the clear language of the contract shows only an intent to protect Williams Brothers from the assertion of *claims* by third parties. Section 1.1 of the subcontract requires the subcontractor (Falcon) to pay for all labor, equipment, supervision, materials, supplies, insurance and other incidental items necessary for the completion of the contract. Section 6.2 provides that:

> Subcontractor agrees to turn said work over to Contractor in good condition and free and clear from all claims, encumbrances and liens for labor, services, or materials, and to protect and save harmless Contractor and Owner from all claims, encumbrances and liens growing out of the performance of this work and all maintenance required under the Contract Documents. In the event suit is filed by any person, firm or corporation asserting a claim or lien for labor, services, or materials used or purchased for use in the work covered by this Contract, Subcontractor will, at his own cost and expense, including counsel fees, defend such suit and pay any judgment rendered therein.

Section 8.1 further provides that Falcon is an independent contractor in the performance of the work, and that Williams Brothers and the Texas Turnpike Authority are interested only in the results obtained.

When these provisions are read in conjunction with Section 7.1 of the subcontract, it is clear that Section 7.1 was included in the contract solely for the protection of Williams Brothers. The agreement provides funds for Williams Brothers to use to defend itself against claims resulting from the subcontract. There is no mention whatsoever of the distribution of the retained funds to unpaid materialmen or suppliers of Falcon. We find no evidence that the parties intended to make unpaid materialmen and suppliers third party creditor beneficiaries under the contract.

■ Contract provisions allowing for retention of a portion of the contract price until claims for work and materials have been paid or liens therefor have been discharged are construed to be for the benefit of the owner, not the laborers, materialmen or subcontractors. Further, they do not confer on the latter any rights in the retained fund. *Citizens Nat. Bank v. Texas & P. Ry. Co.*, 150 S.W.2d at 1007.

The fact that these funds were retained by the general contractor rather than the property owner does not change the beneficiary or the purpose. The reasons for utilizing retainage provisions are equally applicable to the present situation: (1) the provision encourages the diligent completion of the work by furnishing an incentive to the subcontractor to finish his work; (2) the provision affords protection and indemnity to the contractor if the subcontractor abandons the contract before completion; (3) the retainage provides salvage funds for its surety if the surety makes good on defaults for which it is bound; and, (4) it provides additional protection against the chance of harassing litigation by wronged suppliers and materialmen. *Corpus Christi Bank & Trust v. Smith*, 525 S.W.2d at 505; *Citizens Nat. Bank v. Texas & P. Ry. Co.*, 150 S.W.2d at 1007. Further, the subcontract acknowledges that Williams Brothers provided a payment bond for the project against which unpaid suppliers could assert claims. Provision of a payment bond pursuant to TEX.REV.CIV. STAT.ANN. art. 5160 has been found evidence of a *lack* of intent to make materialmen and subcontractors third party beneficiaries of a construction contract. *Corpus Christi Bank & Trust v. Smith*, 525 S.W. 2d at 505. We hold as a matter of law that Economy is not a third party creditor beneficiary to the subcontract between Williams Brothers and Falcon. Point of error one is overruled.

In point of error two, Economy contends the summary judgment was improper because Williams Brothers failed to establish by competent summary judgment evidence that there was no material fact issue as to whether the funds held by Williams Broth-

ers constituted trust funds under TEX.REV. CIV.STAT.ANN. art. 5472e.

Article 5472e is inapplicable where the full contract amount is covered by a corporate surety payment bond. TEX.REV.CIV. STAT.ANN. art. 5472e, § 4 (Vernon 1967) (repealed, now TEX.PROP.CODE ANN. § 162.004); *Trucker's, Inc. v. South Texas Const. Co.*, 561 S.W.2d 855, 859 (Tex.Civ. App.—Corpus Christi 1977, no writ).

Williams Brothers' summary judgment evidence showed that Williams Brothers executed a payment bond for the full contract amount for the project, $19,592,762.50. Mr. James Douglas Pitcock, Jr., President of Williams Brothers Construction Company, Inc., stated in his affidavit that, "The contract price for Project HSC–19 was $19,-592,762.50. Williams Brothers Construction Company, as principal, and Federal Insurance Company, as surety, executed payment bond No. 8072–97–56 to the Texas Turnpike Authority in conformity with the MacGregor Act." A copy of this payment bond was attached to the affidavit as an exhibit. A copy of Williams Brothers' contract with the Texas Turnpike Authority was also attached as an exhibit. The contract reflects that the total contract price for the Houston Ship Channel Toll Bridge project was $19,592,762.50. Further, Mr. James W. Griffin, Director of Engineering and Maintenance and Deputy Executive Director of the Texas Turnpike Authority, who was the Project Manager of the Houston Ship Channel Toll Bridge project, stated in his affidavit that, "Williams Brothers Construction Company, Inc., as principal, and Federal Insurance Company, as surety, provided payment bond No. 8072 97 56 to the Texas Turnpike Authority in the full amount of the contract price."

Economy contends that Williams Brothers was required to prove this payment bond was made in conformity with the requirements of TEX.REV.CIV.STAT.ANN. art. 5160, known as the MacGregor Act, in order for it to be competent summary judgment evidence that a payment bond for the full contract price was provided. Economy contends that because the copy of the payment bond attached as an exhibit to Mr.

Pitcock's affidavit is not dated and the power of attorney attached to the bond is not dated, Williams Brothers has failed to offer sufficient proof that a payment bond was executed by the surety or that the bond was in effect "at a time such that it covered the contract amount." Appellee is correct in stating that the payment bond is not dated. However, the express language of the bond itself shows that Williams Brothers Construction Company, "has entered into the foregoing contract with the Texas Turnpike Authority attached hereto, and .... is required before commencing the work provided for in said contract to execute a bond in the amount of said contract ...". The bond is signed by Mr. Pitcock and Mr. Kenneth L. Meyer, attorney-in-fact for Federal Insurance Company. Appellee is incorrect as to the attached power of attorney, because it is dated January 1, 1978.

Economy further asserts there is no evidence that the bond was approved as to form by the Attorney General or the governmental awarding authority as required by the MacGregor Act. Economy overlooks the fact that in addition to the copy of the actual bond, Williams Brothers offered as summary judgment evidence the two affidavits stating that a payment bond in the full amount of the contract was provided to the Texas Turnpike Authority. These affidavits were clear, positive and direct, credible and free from contradictions, and could have been readily controverted. Therefore, we hold the summary judgment evidence to be sufficient. TEX.R. CIV.P. 166–a(c).

Appellee was not required to prove that all the requirements of Article 5160 were met in order to show that Article 5472e was inapplicable. Williams Brothers was only required to show that a corporate surety payment bond for the full contract amount was provided. The uncontradicted affidavits of Mr. Pitcock and Mr. Griffin were sufficient proof that such a payment bond was provided. Further, even if Williams Brothers was required to show compliance with the MacGregor Act in providing the bond, the evidence showed com-

pliance. Article 5160(A) provides that, "Any bond furnished by any prime contractor in an attempted compliance with this Act shall be treated and construed as in conformity with the requirements of this Act as to rights created, limitations thereon, and remedies provided." TEX.REV.CIV. STAT.ANN. art. 5160(A) (Vernon 1987). Point of error two is overruled.

In its final point of error, Economy contends the summary judgment was improper because Williams Brothers failed to prove by competent summary judgment evidence that there was no material fact issue as to whether Williams Brothers was unjustly enriched. Economy bases its unjust enrichment claims upon theories of quantum meruit and money had and received.

The necessary elements for recovery in quantum meruit are: 1) valuable services or materials were furnished; 2) for the person or entity sought to be charged; 3) these services were accepted, used and enjoyed by the person or entity sought to be charged; 4) under such circumstances as reasonably notified the person or entity sought to be charged that the plaintiff, in performing such services, was expecting to be paid by the person or entity sought to be charged. *Corpus Christi v. S.S. Smith & Sons Masonry, Inc.*, 736 S.W.2d 247, 248 (Tex.App.—Corpus Christi 1987, writ denied). *City of Ingleside v. Stewart*, 554 S.W.2d 939, 943 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). As a general rule, a party who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials. *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988); *Black Lake Pipe Line Co. v. Union Construction Co., Inc.*, 538 S.W.2d 80, 86 (Tex.1976).

We find that there was an express contract covering the materials supplied by Economy; therefore, Appellant may not recover on a quantum meruit theory for the value of those materials. *Truly v. Austin*, 744 S.W.2d at 936. Further, Williams Brothers' summary judgment evidence clearly established that it did not

accept any materials from Economy under circumstances reasonably notifying it that Economy expected Williams Brothers to pay for these services and materials. Williams Brothers' evidence showed that it contracted only with Falcon, that it did not accept any materials or services from Economy, and that it had no knowledge that Economy expected it to pay for services and materials provided to Falcon. To recover in quantum meruit, the plaintiff must show that his efforts were undertaken *for* the person sought to be charged; it is not enough to merely show that his efforts benefitted the defendant. *Truly v. Austin,* 744 S.W.2d at 937.

The contract between Williams Brothers and Falcon designates Falcon as the representative subcontractor on the project and makes Falcon responsible for coordination of its work with the other subcontractors. The testimony of Mr. Carlton shows that he was appointed as project manager by Williams Brothers, that he was not working for Williams Brothers and that he received no compensation from Williams Brothers. There was no evidence to show that Williams Brothers was reasonably notified that Economy expected to be paid by Williams Brothers when it supplied the services and materials under the Falcon–Economy contract. Further, there is no evidence that Economy reasonably expected payment by Williams Brothers. The only evidence is that Economy notified Williams Brothers it was making a claim against the payment bond because Falcon refused to make payment in full under its contract with Economy. There was no fact issue raised by the summary judgment evidence on Economy's quantum meruit claim.

■ Economy also contends that it is entitled to the remainder of the retainage awarded to Williams Brothers on the theory of money had and received. An action for money had and received arises when the plaintiff shows that the defendant holds money which in equity and good conscience belongs to the plaintiff. *Staats v. Miller,* 150 Tex. 581, 243 S.W.2d 686, 687 (1951).

■ Economy contends that Williams Brothers' admission, in its Answer to Writ of Garnishment in the federal lawsuit, that it withheld 5% of the amount due under its contract with Falcon pursuant to § 7.1 of that subcontract is proof that Williams Brothers holds money which in equity and good conscience belongs to Economy. We disagree.

Williams Brothers' Answer to Writ of Garnishment states that the sums withheld under the retainage provision of its contract with Falcon were for amounts due to Williams Brothers from Falcon. Williams Brothers stated that the retainage amount of $401,073.74 was subject to offsets for: 1) liquidated damages for delay in completing its work under the subcontract in the amount of at least $123,675.00; 2) concrete provided to Falcon by Williams Brothers for use on the project in an amount of $44,392.00; and 3) attorneys' fees as provided for in the contract. The judgment of the trial court reads as follows:

"... Williams Brothers Construction Company shall pay to Falcon Construction Company the amount of $301,595.56, that sum being retainage of $401,073.74, plus the sums awarded to Falcon as set forth above less $100,000.00, representing liquidated damages attributable to Falcon Construction Company, and less the sums awarded to Williams Brothers Construction Company as set forth above, including the amounts awarded as attorneys' fees through trial [$125,-000.00], but not including any amounts awarded as attorneys' fees on appeal. This amount shall be held in the registry of the Court until a final order or judgment is entered on the writ of garnishment served on Williams Brothers in that action styled *Falcon Construction Company v. Economy Forms Corporation ...*"

The summary judgment evidence shows that Williams Brothers received no materials, equipment or services from Economy. Economy provided all materials, equipment and services to Falcon pursuant to its contractual agreement with Falcon. Williams Brothers paid Falcon under its subcontract with Falcon for all undisputed amounts and

paid the remainder of the funds the state trial court determined it owed Falcon into the registry of the court where it is to be held until final resolution of the related federal lawsuit. The amounts Williams Brothers was awarded out of the retainage were monies owed to it by Falcon based upon its contractual agreement with Falcon. These are the only funds currently held by Williams Brothers. Therefore, Williams Brothers has clearly paid the full amount it owed Falcon for materials, services and equipment used for construction of the bridge. Williams Brothers has not been unjustly enriched. Point of error three is overruled.

Williams Brothers asserts as a cross point of error that it is entitled to the attorneys' fees awarded in the trial court's judgment for this appeal. We agree.

The subcontract between Williams Brothers and Falcon required Falcon to defend any suits filed for labor, services or materials used or purchased for use in the work covered by the subcontract, and it obligated Falcon to pay all reasonable costs, charges, expenses and attorneys' fees incurred by Williams Brothers in such defense. The trial court awarded Williams Brothers $125,000.00 in attorneys' fees through trial and an additional $20,000.00 in attorneys' fees in the event the case was appealed to the court of appeals. Therefore, this case having been appealed, Williams Brothers is entitled to the $20,000 in attorneys' fees awarded for an appeal. Further, this amount is to be paid out of the funds deposited into the registry of the court below.

Accordingly, the judgment of the trial court is affirmed and Williams Brothers is awarded attorneys' fees in accordance with the trial court's judgment.