NUMBER 13-06-368-CV



COURT OF APPEALS
 


THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG 


 


SCOGGINS CONSTRUCTION 

COMPANY, INC., ET AL., Appellants,


v.


DEALERS ELECTRICAL SUPPLY CO., Appellee.

 


On appeal from the 398th District Court of Hidalgo County, Texas.


 

 

MEMORANDUM OPINION



Before Justices Rodriguez, Garza, and Benavides


Memorandum Opinion by Justice Garza
 

 This appeal is taken from a judgment entered in favor of appellee, Dealers Electrical
Supply Company ("Dealers"), against appellants, Scoggins Construction Company, Inc.
and Bill R. Scoggins, President of Scoggins Construction Company, Inc. (jointly "SCC"). 
By four issues, SCC contends that the judgment rendered by the trial court should be
reversed because: (1) pursuant to section 2253.073 of the Texas Government Code, the
McGregor Act was Dealers's mandatory and exclusive remedy against appellants; thus,
because appellee failed to sue under the McGregor Act, the trial court's judgment should
be reversed; (1) (2) there was no evidence, or alternatively insufficient evidence, to support
a judgment that appellants violated the "joint check" agreement; (3) there was no evidence,
or alternatively insufficient evidence, to find Bill R. Scoggins personally liable for the debt
in question; and (4) there was no evidence, or alternatively insufficient evidence, to support
a Texas Construction Trust Fund Act ("Trust Fund Act") violation, and Dealers failed to
refute the affirmative defenses afforded by the Trust Fund Act. (2) See Tex. Gov't Code Ann.
§ 2253.073 (Vernon 2000); Tex. Prop. Code Ann. § 162.001-.004, § 162.031-.033 (Vernon
2007). We reverse the judgment of the trial court and render judgment in favor of
appellants.I. Factual and Procedural Background

 SCC was hired as the general contractor under a public work contract with the
Mercedes Independent School District ("M.I.S.D.") to build the Ruben Hinojosa Elementary
School in Mercedes, Texas. In accordance with the McGregor Act, SCC executed
performance and payment bonds with Colonial American Casualty and Surety Company
("Colonial") and Fidelity and Deposit Company of Maryland ("Fidelity") for the full contract
amount of $5,751,000. See Tex. Gov't Code Ann. § 2253.021(a)(1), (2) (Vernon Supp.
2006). SCC hired Arturo Bujanos d/b/a Diamond Industries ("Diamond") as the electrical
subcontractor for the project. Dealers served as the supplier of the electrical component
parts used in the project. 

 Subsequently, SCC, Diamond, and Dealers entered into a "joint check" agreement
in an effort to arrange for Dealers to extend credit to Diamond. The record reflects that the
"joint check" agreement required SCC to issue joint checks to Diamond for labor supplied
and to Dealers for materials supplied when Diamond completed its work and submitted a
draw. (3) The underlying dispute arose in May 2002, when Diamond failed to complete its
electrical subcontract with SCC. 

 SCC claims that Diamond walked off the elementary school project and absconded
with materials that were to be incorporated in the elementary school project. According
to SCC, Diamond failed to install numerous electrical materials which had been paid for
through Diamond's construction draw requests, and M.I.S.D. did not accept much of
Diamond's electrical work. SCC claims that it paid $107,440.27 to Borchers Electric to
complete the electrical work on the elementary school project, $34,640.00 to Ace Fire and
Sound to complete the alarm system--both tasks were part of Diamond's subcontract with
SCC, and $8,500 for legal fees in the suit against Diamond for the materials not installed
in the elementary school project. In March 2003, Dealers sent notice to SCC demanding
payment for $78,123.59 in supplies provided to Diamond for the elementary school project.
Stacey Scoggins, an employee of SCC, testified that it refused to pay because the items
were never incorporated into the school project and because Diamond did not complete
the project to the satisfaction of M.I.S.D. 

 On June 10, 2003, Dealers filed suit against SCC and its officers, directors, and
principals, Diamond, Colonial, and Fidelity, alleging violations of the McGregor Act, the
Trust Fund Act, and chapter 53 of the Texas Property Code. On May 25, 2005, the trial
court entered an agreed interlocutory judgment in favor of Dealers against Diamond for the
principal amount due of $78,123.59. Diamond is not a party to this appeal. (4) On
September 20, 2005, the trial court signed an order of partial nonsuit with respect to the
sureties, Colonial and Fidelity. Immediately thereafter, Dealers dropped its McGregor Act
claims and its claims associated with chapter 53 of the Texas Property Code. Dealers
subsequently amended its original petition to allege solely violations of the Trust Fund Act
and the "joint check" agreement as grounds for recovery. Dealers sought to recover the
principal amount owed of $78,123.59 from appellants for materials furnished in the
construction of the elementary school. 

 On November 16, 2005, the trial court conducted a bench trial on Dealers's claims
against appellants. SCC filed a special exception with the trial court requesting the court
to strike Dealers's Trust Fund Act claim and declare that the McGregor Act was Dealers's
exclusive remedy. In support of its special exception, SCC argued that case law supported
its contention that the McGregor Act was Dealers's exclusive remedy. SCC further argued
that Dealers failed to comply with the notice requirements of the McGregor Act, which
required Dealers to provide SCC, Colonial, and Fidelity with notice of a suit upon the
payment bond by the "fifteenth day of the third month after each month in which any of the
claimed labor was performed or any of the claimed material was delivered." See id. §
2253.041(a), (b) (Vernon 2000). However, the trial court denied SCC's special exception
without explanation. 

 The trial court entered findings of fact and conclusions of law on April 3, 2006. On
April 4, 2006, the trial court signed a final judgment in favor of Dealers against SCC. The
trial court awarded Dealers $135,910.08 in damages. The damage award consisted of the
principal amount due of $78,123.59, plus six percent (6%) prejudgment interest set to
accrue from 31 days after the last unpaid invoice, specifically from May 16, 2002 until
March 1, 2006, in the amount of $17,786.49. The trial court also awarded reasonable and
necessary attorney's fees in the amount of $40,000 and court costs. SCC filed a motion
for new trial on April 19, 2006. The trial court set a hearing date of May 31, 2006, for the
motion for new trial. However, the record does not reflect that the hearing was ever held. 
Further, the record does not show that the trial court ruled on SCC's motion for a new trial. 
The motion, therefore, was overruled by operation of law. Tex. R. App. P. 33.1(b). This
appeal ensued. 

II. Analysis

 In its first issue, SCC contends that the McGregor Act was Dealers's exclusive
remedy for this action and because Dealers failed to sue under the McGregor Act, Dealers
should take nothing. Conversely, Dealers maintained throughout trial and on appeal,
without citing relevant authority, that it has a choice to sue under either the McGregor Act
or the Trust Fund Act.A. The McGregor Act

 The Texas legislature promulgated the McGregor Act to provide subcontractors and
suppliers involved in public work contracts a basis for recovery because a subcontractor
or a supplier may not place a lien against a public building. See Capitol Indem. Corp. v.
Kirby Rest. Equip. & Chem. Supply Co., 170 S.W.3d 144, 147 (Tex. App.-San Antonio
2005, pet. denied); Redland Ins. Co. v. Sw. Stainless, L.P., 181 S.W.3d 509, 511 (Tex.
App.-Fort Worth 2005, no pet.); Ybanez v. Anchor Constructors, Inc., 489 S.W.2d 730,
739 (Tex. App.-Corpus Christi 1972, writ ref'd n.r.e.). (5) The McGregor Act is intended to
be a simple and direct method for claimants who supply labor and materials in the
construction of public works to give notice and perfect their claims. Tex. Dep't of Mental
Health & Mental Retardation v. Newbasis Cent., L.P., 58 S.W.3d 278, 280 (Tex. App.-Fort
Worth 2001, pet. dism'd by agr.) (citing City of LaPorte v. Taylor, 836 S.W.2d 829, 832
(Tex. App.-Houston [1st Dist.] 1992, no writ)). Many courts have recognized that the
McGregor Act is highly remedial and should receive the most comprehensive and liberal
construction possible to achieve its purposes. Id. at 280 (citing Ramex Constr. Co. v.
Tamcon Servs., Inc., 29 S.W.3d 135, 139 (Tex. App.-Houston [14th Dist.] 2000, no pet.)
(op. on reh'g); City of Laporte, 836 S.W.2d at 832; United Benefit Fire Ins. Co. v. Metro.
Plumbing Co., 363 S.W.2d 843, 847 (Tex. Civ. App.-El Paso 1962, no writ)).

 The McGregor Act requires prime contractors, such as SCC, to execute a
performance bond to the governmental entity if the public work contract exceeds $100,000. 
See Tex. Gov't Code Ann. § 2253.021(a)(1). The performance bond is solely for the
protection of the governmental entity awarding the public work contract and is conditioned
on the faithful performance of the work in accordance with the plans, specifications, and
contract documents. Id. § 2253.021(b)(1), (3). The McGregor Act also requires a payment
bond for public work contracts exceeding $25,000 to be paid to the governmental entity
awarding the public work contract. Id. § 2253.021(a)(2). The payment bond is solely for
the protection and use of payment bond beneficiaries who have a direct contractual
relationship with the prime contractor or a subcontractor to supply public work labor or
material. See id. § 2253.021(c)(1). (6) 

 The parties do not dispute whether the McGregor Act applies in the present case. 
Instead, Dealers claims that McGregor is not the exclusive remedy for its cause of action. 
In any event, we note that the evidence at trial demonstrated that SCC, acting as the prime
contractor, entered into a contract with M.I.S.D. for the construction of an elementary
school. The contract was clearly "a contract for constructing, altering, or repairing a public
building. . . ." See id. § 2253.001(4) (Vernon 2000). The evidence at trial further reflected
that the contract amount was for $5,751,000 and that SCC executed both a performance
bond and a payment bond for the full amount of the public work contract, as required by
the McGregor Act. See id. § 2253.021(a)(1), (a)(2). The evidence also established that
SCC hired Diamond as the electrical subcontractor for the elementary school project and
that Diamond entered into a direct written contract with Dealers, whereby Dealers agreed
to supply Diamond with the electrical materials to be used in the construction of the
elementary school. Thus, by virtue of Dealers's direct contractual relationship with
Diamond, Dealers is a payment bond beneficiary as contemplated by the McGregor Act. 
Id. § 2253.021(c)(1). 

 As previously mentioned, SCC asserts that the McGregor Act is Dealers's
mandatory and exclusive remedy. However, Dealers, without citing any relevant authority,
contends that the McGregor Act is not an exclusive remedy and that it has a choice to sue
under either the McGregor Act or the Trust Fund Act. See id. § 2253.073; Tex. Prop. Code
Ann. § 162.001(a). Dealers bolsters its argument with the contention that its suit was not
based upon the payment bond, thus obviating the need to sue under the McGregor Act.

 The provisions of the McGregor Act are mandatory and provide the exclusive means
to establish the existence of a cause of action by laborers or suppliers on a public project. 
See Commercial Union Ins. Co. v. Spaw-Glass Corp., 877 S.W.2d 538, 540 (Tex.
App.-Austin 1994, writ denied) (citing Bunch Elec. Co. v. Tex-Craft Builders, Inc., 480
S.W.2d 42, 45 (Tex. Civ. App.-Tyler 1972, no writ)). Moreover, by allowing a claimant to
pursue remedies on both the payment bond and under alternative theories, the prime
contractor would be subject to double liability, which "would reinstate the very evil the
notice requirements [of the McGregor Act] were enacted to eliminate." Id. (noting "[t]he
purpose of these [McGregor Act] notices is to protect the prime contractor from incurring
double liability."). 

B. The Trust Fund Act 

 The Trust Fund Act governs, among other things, "[c]onstruction payments . . .
made to a contractor or subcontractor or to an officer, director, or agent of a contractor or
subcontractor, under a construction contract for the improvement of specific real property
in this state." Tex. Prop. Code Ann. § 162.001(a). Under the Trust Fund Act, a trustee of
funds is liable for misapplication of trust funds if he intentionally or knowingly or with intent
to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds
without first fully paying all current or past due obligations incurred by the trustee to the
beneficiary of the trust funds. See id. § 162.031(a); see also Holladay v. CW&A, Inc., 60
S.W.3d 243, 245-46 (Tex. App.-Corpus Christi 2001, pet. denied). Construction payments
are trust funds if the payments are made to a contractor or subcontractor or to an officer,
director, or agent of a contractor or subcontractor, under a construction contract for the
improvement of specific real property in this state. Tex. Prop. Code Ann. § 162.001(a). 
A contractor, subcontractor, or owner or an officer, director, or agent of a contractor,
subcontractor, or owner, who receives trust funds or who has control or direction of trust
funds, is a trustee of the trust funds. Id. § 162.002. A party who misapplies these trust
funds is subject to civil liability if (1) it breaches the duty imposed by the Trust Fund Act,
and (2) the requisite plaintiffs are within the class of people that the act was designed to
protect and have asserted the type of injury the act was intended to prohibit. Lively v.
Carpet Servs., Inc., 904 S.W.2d 868, 873 (Tex. App.-Houston [1st Dist.] 1995, writ
denied). 

 This Court, in Truckers, Inc. v. South Texas Construction Co., 561 S.W.2d 855, 859
(Tex. App.-Corpus Christi 1977, no writ), held that a subcontractor or supplier in a public
work contract could not recover under the Trust Fund Act where the full contract amount
was covered by a payment bond. (7) See Econ. Forms Corp. v. Williams Bros. Constr. Co.,
754 S.W.2d 451, 457 (Tex. App.-Houston [14th Dist.] 1988, no writ) (noting that a claimant
may not pursue trust fund remedies when the full contract amount is covered by a
corporate surety payment bond). (8) It is noteworthy that, though not applying the McGregor
Act or the Trust Fund Act, Texas courts have held that where a payment bond is properly
executed and recorded, subcontractors and suppliers may only recover on the payment
bond. See Fid. & Deposit Co. v. Felker, 469 S.W.2d 389, 390 (Tex. 1971); see also Perry
& Perry Builders, Inc. v. Galvan, No. 03-02-00091-CV, 2003 Tex. App. LEXIS 6341, at *31
(Tex. App.-Austin July 24, 2003, pet. dism'd) (mem. op.) (citing Tex. Prop. Code Ann. §
53.201(b) (Vernon 2007); Felker, 469 S.W.2d at 390). Specifically, the Texas Property
Code provides that any person can file a bond to indemnify against a lien and that a
claimant may not file suit against an owner when a valid bond is filed under a private
contract. See Tex. Prop. Code Ann. §§ 53.171(a), 53.201(b) (Vernon 2007). In other
words, a claimant may only recover on the validly executed bond itself in both the private
and public contexts. See id. § 53.201(b); see also Trucker's, Inc., 561 S.W.2d at 859;
Econ. Forms Corp., 754 S.W.2d at 457.


1. Article 5472e and the Trust Fund Act (9) 

 Dealers notes that the Trust Fund Act was amended on August 31, 1987, to
"exclude from prosecution 'a corporate surety who issues a payment bond covering the
contract for the construction or repair of the improvement.'" Dealers further notes that prior
to the August 31, 1987 amendment, the Trust Fund Act "excluded from prosecution
'receipts under a construction contract if the full contract amount is covered by a corporate
surety payment bond.'" Therefore, Dealers argues that the August 31, 1987 amendment
to the Trust Fund Act limits the holdings in Economy Forms Corp. and Trucker's, Inc. to
corporate "sureties who issue payment bonds," while "allow[ing] claims against general
contractors, their officers . . . whether or not there is any payment bond." SCC counters
by asserting "that no Texas court and no treatise [on construction law] has stated that the
1987 amendment to the Texas Construction Trust Fund Act changed long-standing Texas
case law ruling that the McGregor Act was an 'exclusive' and 'mandatory' remedy." 
Because of these arguments, a discussion of the legislative history of former article 5472e,
the previous version of the Trust Fund Act, is necessary.

 Former article 5472e was a two part statute. In pertinent part, the first section of the
statute provided: 

 All moneys or funds paid to a contractor or subcontractor or any officer,
director or agent thereof, under a construction contract for the improvement
of specific real property in this state, and all funds borrowed by a contractor,
subcontractor, owner, or any officer, director or agent thereof, for the
purpose of improving such real property which are secured in whole or in part
by a lien on the specific property to be improved are hereby declared to be
Trust Funds for the benefit of the artisans, laborers, mechanics, contractors,
subcontractors or materialmen who may labor or furnish labor or material for
the construction or repair of any house, building or improvement whatever
upon such real property; provided, however, that moneys paid to a contractor
or subcontractor or borrowed by a contractor, subcontractor, or owner may
be used to pay reasonable overhead of said contractor, subcontractor, or
owner, directly related to such construction contract. The contractor,
subcontractor, owner, or any officer, director or agent thereof, receiving such
payments or funds, or having control or direction of same, is hereby made
and constituted a Trustee of such funds so received or under his control or
direction.


Act of May 27, 1967, ch. 323, §§ 1-7, 1967 Tex. Gen. Laws 770, repealed by Act of June
19, 1983, ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729-30 (current version at Tex. Prop.
Code. Ann. §§ 162.001-.004). Section 2 of the statute provided: 

 Any Trustee, who shall, directly or indirectly, with intent to defraud, retain,
use, disburse, misapply, or otherwise divert, any trust funds, or part thereof
. . . without first fully paying and satisfying all obligations of the Trustee to all
artisans, laborers, mechanics, contractors, subcontractors, or materialmen,
incurred or to be incurred in connection with the construction and
improvements, for which said funds were received, shall be deemed to have
misapplied said Trust Funds . . . . 


Act of May 27, 1967, ch. 323, §§ 1-7, 1967 Tex. Gen. Laws 770 (repealed 1983) (current
version at Tex. Prop. Code. Ann. §§ 162.031-.033). 

 Unless a statute is ambiguous, we must follow the clear language of the statute,
adding nothing beyond what appears. See Park Envtl. Equip., Ltd. v. Texas Capital
Funding, Inc., 102 S.W.3d 243, 245 (Tex. App.-Houston [14th Dist.] 2003, pet. denied)
(citing Cameron v. Terrell & Garrett, Inc., 618 S.W.2d 535 (Tex. 1981) (stating that "every
word excluded from a statute must . . . be presumed to have been excluded for a
purpose.")). Language is read into a statute only when necessary to give effect to the clear
intent of the legislature. Office of the Attorney Gen. of Tex. v. Lee, 92 S.W.3d 526, 529
(Tex. 2002).

 In reviewing the plain-language of former article 5472e and the current version of
the Trust Fund Act, we find the two statutes to be similar. See Act of May 27, 1967, ch.
323, §§ 1-7, 1967 Tex. Gen. Laws 770 (repealed 1983); Tex. Prop. Code Ann. §§
162.001, 162.002, 162.031. The underlying intent of former article 5472e was summarized
by the court in McCoy v. Nelson Utils. Servs., 736 S.W.2d 160, 164 (Tex. App.-Tyler 1987,
writ ref'd n.r.e.):

 This statute [former article 5472e] was enacted to give protection to
materialmen in addition to that provided by the materialman's lien statutes. 
This act declares that all funds paid to a contractor or subcontractor under
a construction contract for the improvement of specified real property, and
all funds borrowed by a contractor, subcontractor, or owner for the purpose
of improving such real property, which are secured in whole or in part by a
lien on the specific property to be improved, are Trust Funds for the benefit
of the artisans, laborers, mechanics, contractors, subcontractors, or
materialmen who may labor or furnish labor or materials for the
improvements, and appoints the contractor, subcontractor, or owner
receiving such funds as Trustee. . . . Finally, former article 5472e is afforded
a broad and liberal construction to protect materialmen.


(Internal citations omitted). In re-codifying former article 5472e, the Texas legislature noted
that the property code was intended to be "a topic-by-topic revision of the state's general
and permanent statute law without substantive change." Tex. Prop. Code Ann. § 1.001(a)
(Vernon 2004) (emphasis added). 

 The current version of the Trust Fund Act was enacted to further the same
legislative intent of protecting materialmen. See McCoy, 736 S.W.2d at 164; Lively, 904
S.W.2d at 871 (noting that the Trust Fund Act is remedial in nature and is to protect the
"exposed" or "unpaid" subcontractor or supplier on a project); see also Republicbank, 691
S.W.2d at 607. Dealers has correctly noted that the Trust Fund Act was amended in 1987
to exclude "from prosecution 'receipts under a construction contract if the full contract
amount is covered by a corporate surety payment bond.'" See Act of Aug. 31, 1987, 70th
Leg., R.S., ch. 578, § 2, 1987 Tex. Gen. Laws 2283 (amended 1987) (current version at 
Tex. Prop. Code Ann. § 162.004). However, Dealers has not provided any support for its
contention that the 1987 amendment to the Trust Fund Act allows suppliers and
subcontractors to file suit against prime contractors despite the existence of a public work
contract and an accompanying payment bond. 

 Furthermore, by allowing subcontractors and suppliers in a public work contract to
pursue claims under the Trust Fund Act, the need for a payment bond in public work
contracts and in private contracts would be eliminated and would subject general
contractors to liability under both the trust fund statute and the payment bond, which is
contrary to the intent of the legislature. See Tex. Gov't Code Ann. § 2253.021(a)(2); Tex.
Prop. Code Ann. § 53.231(b) (Vernon 2007); see also Commercial Union Ins. Co., 877
S.W.2d at 540. Governmental entities require general contractors in a public work contract
to provide, among other things, a payment bond. See Tex. Gov't Code Ann. §
2253.021(a)(2). It is clear that the Texas legislature intended for the payment bond to
protect subcontractors and suppliers in public work contracts. See id. § 2253.021(c)(1);
see also Newbasis Cent., L.P., 58 S.W.3d at 280 (citing Ramex Constr. Co., 29 S.W.3d
at 139; City of Laporte, 836 S.W.2d at 832; United Benefit Fire Ins. Co., 363 S.W.2d at
847). Essentially, applying the Trust Fund Act to this claim would eviscerate the payment
bond provision of the McGregor Act. 

 Texas case law supports the premise that the McGregor Act applies exclusively to
public work contracts of this nature. (10) In reviewing Texas case law applying either the
McGregor Act or the Trust Fund Act, we found that Texas courts have continually applied
the McGregor Act solely to disputes involving public work contracts where a payment bond
is required and applied the Trust Fund Act to private construction contracts where a
payment bond was not executed. See Green Int'l, Inc. v. Solis, 951 S.W.2d 384, 392
(Tex. 1997) (applying former article 5160 (the McGregor Act) to public works projects
whereby a general contractor is required to execute a payment bond); Capitol Indem.
Corp., 170 S.W.3d at 146-47 (applying the McGregor Act notice provisions to a claim on
a payment bond associated with additions and renovations to public buildings in the Natalia
Independent School District); Newbasis Cent., L.P., 58 S.W.3d at 279-81 (noting that the
McGregor Act applies to public work contracts even in the absence of a payment bond);
Ramex Constr. Co., 29 S.W.3d at 139 (holding that the McGregor Act applies to public
work contracts and that a claimant's recovery is on the bond itself); Commercial Union Ins.
Co., 877 S.W.2d at 540 (holding that the payment bond required by former article 5160
(the McGregor Act) is "the exclusive remedy for laborers or suppliers on a public project.");
City of Laporte, 836 S.W.2d at 830-32 (former article 5160 (the McGregor Act) "provides
the only procedure and remedy for presenting claims where the [public work] contract
exceeds $25,000."); see also Suretec Ins. Co. v. Myrex Indus., No. 09-06-433-CV, 2007
Tex. App. LEXIS 6460, at *3, **11-13 (Tex. App.-Beaumont Aug. 16, 2007, pet. filed)
(applying the McGregor Act to a dispute arising from the construction of the Ben Rogers
Regional Visitors Information Center, a public building in Beaumont, Texas); cf Holladay,
60 S.W.3d at 244-46 (applying the Trust Fund Act to a dispute involving asphalt and paving
services supplied for construction projects financed by a private entity under a private
contract); Lively, 904 S.W.2d at 870, 75-76 (applying the Trust Fund Act framework to a
dispute involving contracts for materials and services provided on nine private construction
projects that were unpaid). (11) 

 We, therefore, conclude that Dealers does not have the choice to sue under either
the McGregor Act or the Trust Fund Act given that SCC executed a valid payment bond. 
Moreover, the payment bond provision of the McGregor Act would be eviscerated if
Dealers was allowed to proceed under the Trust Fund Act for the public work contract,
which would be contrary to the intent of the legislature. Finally, we have not found, nor has
Dealers cited to, any authority where a reviewing court applied the Trust Fund Act to a
public work contract. C. The "Joint Check" Agreement

 We now address appellant's second issue, but only as it pertains to its first issue. 
SCC argues that by allowing Dealers to pursue remedies irrespective of the payment bond,
specifically the "joint check" agreement, the trial court implicitly authorized the
circumvention of the McGregor Act and subjected construction companies and sureties to
double liability. In response, Dealers asserts that because its suit was "not based on the
payment bond or against the surety," the "joint check" agreement allows for recovery under
the Trust Fund Act. 

 As previously mentioned, SCC entered into a "joint check" agreement with Diamond
and Dealers to procure supplies and labor to be used in the construction of a public
building--the elementary school. See Tex. Gov't Code Ann. § 2253.001(4). The "joint
check" agreement required SCC to issue a joint check to Diamond and Dealers upon the
completion of labor or the furnishing of materials to the elementary school project. (12) SCC
received payment from M.I.S.D. upon the filing of a construction draw for work completed
on the elementary school project, which it then disbursed to Diamond and Dealers through
the "joint check" agreement. Construction draws were typically submitted each month. 
The evidence shows that SCC paid Diamond $665,689 for services rendered. In May
2002, Diamond allegedly absconded with materials provided by Dealers, but not
incorporated into the elementary school project. SCC contends that Dealers did not make
a request for payment until March 2003, more than ten months after Bujanos walked off
the project. At trial, Ernesto Garcia, Jr. testified that Dealers had not been paid for the
materials taken by Diamond despite securing an agreed interlocutory judgment against
Diamond for the full amount of the debt owed of $78,123.59. However, as shown below,
the language of the "joint check" agreement demonstrates that the agreement covered the
payment of labor and material furnished to the project, which is within the purview of the
payment bond:

 Scoggins Construction ("General Contractor") for good and value
consideration, the receipt and sufficiency of which is hereby acknowledged,
and to induce Dealers Electrical Supply ("Vendor") to extend or continue
extending credit to Diamond Industries ("Subcontractor") for the purchase of
materials and/or other services which have been furnished or which will be
provided in the future for incorporation into the construction of the
improvements located at Mile 2 East ("Project") [Ruben Hinojosa Elementary
School] . . . .


(Emphasis added). As required by the McGregor Act, the payment bond covered the
public work labor and materials contemplated by the "joint check" agreement, which we
have found to have a preclusive effect on Trust Fund Act remedies for public work
contracts. See Tex. Gov't Code Ann. § 2253.021(c)(1). Furthermore, a suit on the
payment bond under the McGregor Act is Dealers's exclusive and mandatory remedy for
the unpaid materials. See Commercial Union Ins. Co., 877 S.W.2d at 540. Dealers chose
not to sue on the payment bond under the McGregor Act. 

 We conclude that the "joint check" agreement does not provide grounds for Dealers
to circumvent the remedy provided by the payment bond provision of the McGregor Act. 
Based on the foregoing, the "joint check" agreement does not provide an alternate remedy
for Dealers considering SCC executed a valid payment bond. Accordingly, we conclude
that the McGregor Act was Dealers's exclusive and mandatory remedy on this public work
contract, thus rendering the Trust Fund Act inapplicable in this matter. As such, we sustain
appellant's first issue.

III. Conclusion

 Having sustained appellants' first issue, we need not address appellants' remaining
issues, as each is based on the applicability of the Trust Fund Act. See Tex. R. App. P.
47.1. Accordingly, we reverse the trial court's judgment and render judgment in favor of
appellants.

 

 ___________________________ 

 DORI CONTRERAS GARZA,

 Justice


Memorandum Opinion delivered and 

filed this the 20th day of December, 2007.

 
1. Chapter 2253 of the Texas Government Code, commonly referred to as the "McGregor Act," 
governs public work performance and payment bonds. See generally Tex. Gov't Code Ann. §§ 2253.001,
2253.073 (Vernon 2000), § 2253.021 (Vernon Supp. 2006)
. The McGregor Act covers contracts with
governmental entities and requires general contractors to execute payment and performance bonds to the
governmental entity before commencing construction. Id. §§ 2253.001, 2253.021(a). 
2. Chapter 162 of the Texas Property Code, commonly referred to as the "Texas Construction Trust
Fund Act," governs construction payments, loan receipts, and the misapplication of trust funds. See generally
Tex. Prop. Code Ann. §§ 162.001-.004 (Vernon 2007), §§ 162.031-.033 (Vernon 2007). Specifically, the
Trust Fund Act governs, among other things, "[c]onstruction payments . . . made to a contractor or
subcontractor or to an officer, director, or agent of a contractor or subcontractor, under a construction contract
for the improvement of specific real property in this state." Id. § 162.001(a). We will differentiate between the
McGregor Act and the Texas Construction Trust Fund Act later in this opinion.
3. Ernesto Garcia, Jr. and Stacey Scoggins explained in their testimony that often subcontractors have
poor credit ratings or are risky business associates, which inhibits their ability to procure materials necessary
for use in construction projects. Therefore, general contractors typically enter into a "joint check" agreement
with the subcontractors and the suppliers. In the "joint check" agreement, the general contractor guarantees
payment to all suppliers when the subcontractor is paid for work completed. In exchange for the payment
guarantee, the supplier extends a line of credit to the "risky" subcontractor.
4. On June 14, 2002, SCC filed suit against Diamond to recover missing electrical materials that were
allegedly paid for in electrical construction draws by SCC. The suit, filed in the 404th District Court of
Cameron County, Texas, was styled Scoggins Constr. Co., Inc. v. Arturo Bujanos d/b/a Diamond Indus.,
Cause No. 2002-06-002391-G. On May 12, 2003, SCC obtained a writ of sequestration to search Diamond's
warehouse located in San Benito, Texas, to recover the missing electrical materials. SCC's attempts to
recover the missing materials have been unsuccessful. On appeal, SCC noted that Diamond ceased
business operations after walking off this elementary school project in May 2002 and attempts to track down
Arturo Bujanos have also been unsuccessful. 
5. Section 2253.001 of the Texas Government Code provides, in pertinent part, that a public work
contract "means a contract for constructing, altering, or repairing a public building or carrying out or completing
any public work" with a governmental entity. Tex. Gov't Code Ann. § 2253.001(4). Section 2253.001 further
provides, in pertinent part, that a "'[g]overnmental entity' means a governmental or quasi-governmental
authority authorized by state law to make a public work contract, including . . . (C) a school district or a
subdivision of a school district." See id. § 2253.001(1),(1)(C); see also Dallas Metal Fabricators, Inc. v.
Lancaster Indep. Sch. Dist., 13 S.W.3d 123, 125 (Tex. App.-Dallas 2000, pet. denied).
6. Section 2253.021 provides, in relevant part, that "payment bond beneficiaries" are those "who have
a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or
material." Tex. Gov't Code Ann. § 2253.021(c)(1).
7. In Trucker's, Inc. v. South Texas Construction Co., 561 S.W.2d 855, 859 (Tex. App.-Corpus Christi
1977, no writ), this Court considered a previous version of the Trust Fund Act, former article 5472e.
8. Similar to Trucker's, Inc., the court in Economy Forms Corp. v. Williams Brothers Construction Co.,
754 S.W.2d 451, 457 (Tex. App.-Houston [14th Dist.] 1988, no writ) also considered former article 5472e. 
See Trucker's, Inc., 561 S.W.2d at 859. 
9. Former article 5472e, the previous version of the Trust Fund Act, is now incorporated in chapter 162
of the Texas Property Code. Act of May 27, 1967, ch. 323, §§ 1-7, 1967 Tex. Gen. Laws 770, repealed by
Act of June 19, 1983, ch. 576, § 6, 1983 Tex. Gen. Laws 3475, 3729-30 (current version at Tex. Prop. Code.
Ann. §§ 162.001-.004, §§ 162.031-.033).
10. Texas courts have applied the McGregor Act to public work contracts for nearly seventy-five years. 
See Employers' Liab. Assur. Corp. v. Young County Lumber Co., 64 S.W.2d 339, 344-45 (Tex. 1933) (holding
that strict compliance with former article 5160 (the McGregor Act) is required for recovery on a public work
contract, which, in this case, involved a contract dispute in the construction of Scotland Lateral Road in Archer
County); Indem. Ins. Co. v. S. Tex. Lumber Co., 29 S.W.2d 1009, 1010-11 (Tex. 1930) (holding that former
article 5160 (the McGregor Act) applies to public work contracts and that a cause of action under a bond is
exclusive, regardless of whether the bond is a statutory bond or not); Barfield v. Henderson, 471 S.W.2d 633,
636-37 (Tex. App.-Corpus Christi 1971, writ ref'd n.r.e.) (applying former article 5160 (the McGregor Act) to
a public work contract dispute and holding that strict compliance with former article 5160 requirements is
necessary). 
11. In reviewing secondary authority on the applicability of the McGregor Act and the Trust Fund Act,
we have found the following:


 In construing the statute [the McGregor Act] requiring a contractor's payment bond for the
protection of materialmen and laborers under a public works contract, and in giving a cause
of action thereon to those whose benefit the bond is executed, the intent of the legislature is
that the remedies therein accorded to materialmen and laborers are exclusive. This is so
even though it is claimed that the bond sued on is a valid common-law, rather than a
statutory, obligation. If no recovery can be had in similar circumstances on a statutory bond,
a contention that the claimants are suing on a common-law obligation will be unavailing. The
statutes are mandatory as well as exclusive; they must be complied with in all respects or the
action is not maintainable, although a party to such a suit may waive certain failures to
comply with the statute, or be estopped to assert such failures.


61 Tex. Jur. Public Works and Contracts § 52 (2006) (internal citations omitted) (emphasis added). 
Furthermore, the McGregor Act--similar to the Miller Act, which also requires payment and performance
bonds for public work contracts at the federal level--provides "an alternative source of payment in the event
of the general contractor's default, these statutes [the McGregor Act] afford at least as much protection to
subcontractors and suppliers who provide services or materials on public projects as they would enjoy were
they able to assert an interest in the improved property." Lawrence Ponoroff, Construction Claims in
Bankruptcy: Making the Best of a Bad Situation, 11 Bankr. Dev. J. 343, 353 (1994) (internal citations omitted). 
Therefore, Dealers would not have been worse off pursuing a claim on the payment bond under the McGregor
Act, not to mention Dealers still has a judgment for the full amount of the debt against Diamond. See id.
12. The true nature of the "joint check" agreement is hotly contested. In his testimony, Ernesto Garcia,
Jr., an employee of Dealers, stated that the "joint check" agreement was a debt guarantee between SCC and
Dealers whereby SCC would pay all debts accrued by Diamond in exchange for the line of credit extended
to Diamond. However, the testimony of Stacey Scoggins, an employee of SCC, reveals that the "joint check"
agreement was not a debt guarantee and that the agreement solely required SCC to pay Dealers by joint
check when Diamond completed the work on the project and submitted a draw. In its findings of fact, the trial
court concluded that the "joint check" agreement was a debt guarantee by SCC. However, the trial court failed
to analyze Dealers's claims and the "joint check" agreement within the context of the McGregor Act, as
required. See Tex. Gov't Code Ann. § 2253.073; Commercial Union Ins. Co. v. Spaw-Glass Corp., 877
S.W.2d 538, 540 (Tex. App.-Austin 1994, writ denied).